KNAPP, STOUT & COMPANY, *Appellant*, v. THE ST. LOUIS TRANSFER RAILWAY COMPANY.

Division One, December 22, 1894.

1. **Municipal Corporation:** ORDINANCE: RAILWAY SWITCH: PROPERTY DEVOTED TO PUBLIC USE. An ordinance granting permission for a railway switch on a public street for the use of a stock yards company, created for "the convenience of drovers, dealers and the public at large," is not invalid on the ground that it is constructed for private purposes; the switch in such case is devoted to public use.

2. ———: ———: ———: STREET: SIDEWALK. An ordinance granting permission to construct a railway switch track along the western portion of H. street does not restrict the construction of such switch to the street as distinguished from the "sidewalk."

3. ———: STREET: SIDEWALK. The word street as generally used includes the roadway, the gutters and the sidewalks, but it may have a more restricted meaning.

4. ———: ———: RAILROAD: RIGHTS OF ABUTTING PROPERTY OWNERS. A municipal corporation has no power to grant to a railroad company such use of a street as will destroy its usefulness as a public thoroughfare, or as will destroy, or unreasonably interfere with, the right of an abutting owner to access to and from his property.

5. ———: ———: ———: ———. The fact that a property owner has received freight on a switch track which was unlawfully, and against his consent, constructed in front of his property, does not affect his right to have the track moved.

6. ———: ———: ———: ———: INJUNCTION. Where a railroad track is unlawfully constructed on a sidewalk adjoining the property of another, and an injury of a continuous character is thereby inflicted upon him, relief by injunction will be accorded.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

REVERSED AND REMANDED.

*T. J. Portis* and *T. G. Portis* for appellant.

(1) Defendant had no authority whatever to con-struct or operate the switch track in question on Hall street as and in the manner it was done. *Dubach v. Railroad*, 89 Mo. 483; Charter of St. Louis, art. 5, sec. 26, par. 2; Revised Ordinances of St. Louis, 1887, sec. 577.; Revised Statutes, 1889, secs. 2563, 2590, 2591; city ordinance number 15,608, sec. 1; *Tate v. Railroad*, 64 Mo. 158; *Glaessner v. Brewing Co.*, 100 Mo. 508; *Sugar Refining Co. v. Elevator Co.*, 82 Mo. 124; *Glasgow v. City*, 87 Mo. 682.     (2) Defendant had no authority to construct or operate the switch track in question upon that part of Hall street which had, long prior to the date of said ordinance number 15,608, been reserved and set apart by said ordinance of said city of St. Louis (Revised Ordinances of 1887, sec. 577) for a sidewalk on said Hall street, and the said ordinance number 15,608 did not repeal or attempt to repeal said section 577 of the Revised Ordinances of 1887. Also see sec. 1, ordinance number 15,608; Charter of St. Louis, art. 3, sec. 26, par. 2; *Roe v. City of Kansas*, 100 Mo. 190; *Tritz v. City of Kansas*, 84 Mo. 632; *Walker v. City of Kansas*, 99 Mo. 647; *Stephens v. City of Macon*, 83 Mo. 345; R. S. 1889, secs. 2563, 2590 and 2591; *Dubach v. Railroad*, 89 Mo. 483.     (3) The statutes of this state authorize the construction and operation of railroads across, along and upon streets in cities, by and with the assent of the city authorities; but they give no authority to do so in any other manner than may be prescribed by such authorities, provided that it is not in violation of any other law, city ordinance, or of the rights of abutting property owners.     And section 2543, Revised Statutes of 1889, expressly provides that a railroad track laid in a

street must not destroy its use as a public thoroughfare. *Bldg. Ass'n v. Tel. Co.*, 88 Mo. 278; *Smith v. Railroad*, 98 Mo. 20; *Mfg. Co. v. St. Louis*, 113 Mo. 315; *Story v. Railroad*, 90 N. Y. 145. And all the cases in Missouri, from 31 Mo. 183, down to the present time. (4) The right of the abutting property owner to the use of the street, and to ingress to and egress from his property, are as much property as the lot itself, and neither the legislature nor the city can deprive him of such property, or damage it, without compensation. Constitution 1875, art. 2, sec. 21; *Smith v. Railroad*, 98 Mo. 20; *Rude v. St. Louis*, 93 Mo. 413; *Lackland v. Railroad*, 31 Mo. 181; *Bridge Co. v. Schaubacher*, 57 Mo. 580; *Ferrenbach v. Turner*, 86 Mo. 416. (5) The right of an abutting owner to access to and from the street is a private right, in the sense that it is something different from the right which the members of the public have to use the street for public purposes. Conformably to this distinction, the plaintiff, whose right of access to and egress from its property, we insist, has been unlawfully and materially obstructed, has a good cause of action against the defendant, and the circuit court should have so held. *Rude v. St. Louis*, 93 Mo. 414; 2 Dillon on Municipal Corp. [3 Ed.], sec. 730, and notes; *Fritz v. Hobson*, 18 American Law Register (U. S.), 615; Lewis on Eminent Domain, sec. 100; *Shawneetown v. Mason*, 82 Ill. 337; *Winchester v. Stevens Point*, 58 Wis. 350; *Buckner v. Railroad*, 60 Wis. 264. (6) Injunction is the proper and only remedy in this case. Damage to private property must be paid before the property should be disturbed and a court of equity will enjoin one who proposes to continuously damage private property in the manner the proof shows is being done in this case. *Kansas City v. Railroad*, 97 Mo. 467; *State v. Lawrence*, 7 Am. and Eng. R. R. Cases,

93; High on Injunctions; *Story v. Railroad*, 90 N. Y. 179.

*Thomas E. Ralston* and *Alonzo C. Church* for respondent.

(1)   The St. Louis Union Stock Yards Company is a public institution, exercising is franchises for public use, and its "property is devoted to a public use," "affected with a public interest," and it is "subject to public regulations." *Munn v. Illinois*, 94 U. S. 113; *Sugar Refining Co. v. Elevator Co.*, 101 Mo. 204; Lewis on Eminent Domain, sec. 170; *Dock, etc., Co. v. Garrity*, 115 Ill. 115; Revised Statutes, 1889, secs. 2590, 2591; *Clark v. Blackmar*, 47 N. Y. 150. (2) The stock yards being a public institution under the law, the city of St. Louis had the clear and undoubted right to authorize the St. Louis Transfer Railway Company and the St. Louis Merchants' Bridge Terminal Railway Company to lay down and operate the switch complained of over the western portion of Hall street, for the purpose of serving the public and said St. Louis Union Stock Yards Company, and connecting with each other, which was done by ordinance number 15,608.   R. S., secs. 2543, 2590, 2591; *Mfg. Co. v. Railroad*, 113 Mo. 308; *Osborne & Co. v. Railroad*, 147 U. S. 248; *Building Association v. Telephone Co.*, 88 Mo. 268; 2 Dillon's Mun. Corp. [4 Ed.], note on bottom of p. 847, and top of p. 848, and note p. 855; *Railroad v. Second Municipality*, 1 La. Ann. 128; *Knight v. Railroad*, 9 La. Ann. 284; *Block v. Railroad*, 58 Pa. St. 249; *Philadelphia v. Railroad*, 58 Pa. St. 253; *Clarke v. Blackmar*, 47 N. Y. 71; *Railroad v. People*, 92 Ill. 179; *Olney (City of) v. Wharf*, 115 Ill. 519; *Dock, etc., Co. v. Garrity*, 115 Ill. 155–167.   (3) Even if it could be held (which it can not) that the

stock yards was a private institution, many authorities hold that the defendant could have condemned land to reach it, and the city could have authorized the laying of a sidetrack in the street to serve it. *Deitrick v. Murdock*, 42 Mo. 279; 1 Wood's Ry. Law, p. 654; *Getz's Appeal*, 3 Am. and Eng. R. R. Cases, 186; 12 Am. and Eng. Encyclopedia of Law, p. 942, note 2; *Railroad v. Porter*, 42 Am. and Eng. R. R. Cases, 170; 2 Dillon's Mun. Corp. pp. 847, 848, 855; *Dock, etc., Co. v. Garrity*, 115 Ill. 155; *Truesdale v. Sugar Co.*, 101 Ill. 561; *Mills v. Parlin*, 106 Ill. 60. (4) The language of the city ordinance clearly authorized the switch to be laid to Bremen avenue upon, along and across the western twenty feet of Hall street. *First.* "A 'street' includes sidewalks and gutters." 2 Dillon's Mun. Corp. [4 Ed.], sec. 780, and note and cases cited. *Second.* Hall street being totally unimproved and without sidewalks, curbs or gutters, any reference in the language of the ordinance to laying the switch upon, along or across the "sidewalk" of Hall street, to Bremen avenue, would have been absolutely unnecessary, useless and improper. *Third.* There is nothing sacred about a sidewalk, even on an improved street, exempting it from a new public use for the public good. *Building Association v. Telephone Co.*, 88 Mo. 267. (5) The fact that the switch was laid from the south line of Bremen avenue, in Hall street, and not over city blocks 1934 and 2531, as provided by the ordinance, may be *ultra vires*, or an abuse or excess of corporate powers, but it gives no right of injunction to a private citizen on that ground. The question can only be raised by the state, or defendant's stockholders, in a direct proceeding. *Hovelman v. Railroad*, 79 Mo. 632; *Sugar Refining Co. v. Elevator Co.*, 101 Mo. 192. (6) The switch complained of was laid for a public use, under a valid city ordinance, along the exact route provided by

said ordinance (at least in front of plaintiff's premises and to the south line of Bremen avenue, and plaintiff's prayer for relief is confined to its frontage on Hall street of forty-three feet) at the grade of Hall street and Bremen avenue and under and to the satisfaction of the street commissioner, as provided by ordinance number 15,608. Injunction will not lie under these circumstances. *Building Association v. Telephone Co.*, 88 Mo. 258; *Mfg. Co. v. Railroad*, 113 Mo. 308; *Osborne & Co. v. Railroad*, 147 U. S. 248. *First.* Under the facts of this case, if plaintiff has any remedy (which is denied), it is simply an action at law to recover damages. *Osborne & Co. v. Railroad*, 147 U. S. 248. *Second.* The operation of the switch track complained of can only be enjoined, in the state of Missouri, upon the ground that its effect is to destroy Hall street, for public use, across Bremen avenue and in front of plaintiff's premises, while the evidence totally fails to show any substantial impairment of the use of the street. *Dubach v. Railroad*, 89 Mo. 483 ; *Lockwood v. Railroad*, 122 Mo. 86. (7) Plaintiff is barred of relief by injunction by laches. 1 High on Injunctions [3 Ed.], secs. 618–643.

BLACK, C. J.—The plaintiff corporation owns a parcel of land in the city of St. Louis, fronting one hundred and seventy-eight feet on the north line of Bremen avenue, and extending north three hundred and twenty feet along the west side of Hall street. It carries on a planing mill business on this property, and has extensive buildings and sheds thereon, suitable for such business. By this suit it seeks to enjoin the defendant from using and operating cars propelled by steam power on a track located on the west side of Hall street, in front of the plaintiff's property. The case

is now before us on the plaintiff's appeal from a judgment dismissing the petition, on final hearing.

Bremen avenue runs east and west. It is an improved street, that is to say, it has been raised from eight to ten feet above the surface of the ground, and macadamized. Hall street is one hundred feet wide, and runs north and south. At the date now in question, there were two double railroad tracks laid and operated on and along this street, one set owned by the Merchants' Bridge & Terminal Railway Company, and the other by the defendant, The St. Louis Transfer Railway Company. The defendant's double track runs north along the roadway of Hall street until it reaches Bremen avenue, where it curves west and passes over the west line of Hall street, on the plaintiff's property, at a point about fifty feet north of Bremen avenue, and runs thence in a northwest direction. The switch track, the subject of this dispute, begins at the point where the defendant's double track crosses the west line of Hall street, and extends south fifty feet in front of the plaintiff's property to Bremen avenue, and thence south along what would be the west sidewalk of Hall street, to the Union Stock Yards. Hall street is unimproved, save as it has been filled up by the railroad companies so as to bring their tracks to a grade with Bremen avenue.

The defendant laid this switch track along the fifty feet of the plaintiff's Hall street front, on Sunday, the twenty-first of December, 1890. The plaintiff, we conclude, had notice on Saturday that the track would be laid on the next day. It seems to have been constructed on Sunday for two purposes; *first*, to avoid delaying the plaintiff's teams, and, *second*, to avoid the service of injunctive process until the track should be completed along the fifty feet. This suit was not commenced until the twenty-sixth of February, 1891, at

which time the defendant was operating the switch. The plaintiff did not procure, or seek to obtain, a temporary injunction.

The revised ordinances of 1887, put in evidence by the plaintiff, provide that all streets one hundred feet wide shall have sidewalks twenty feet wide. The proof is clear and undisputed that the switch was placed on and along what would be the west sidewalk under the terms of this general ordinance. It "is right up to the line of the plaintiff's property." The plaintiff dresses at its mill from seventy-five thousand to one hundred thousand feet of lumber per day. About one third of this amount was hauled to the lower part of the mill by teams over the Hall street front, before the railroad track was laid down. Since that time the Hall street front has not been used because of the switch track. That the plaintiff has been and is damaged to a considerable extent by reason of this track, and put to daily inconvenience, admits of no doubt, though the extent of the damage can not be calculated from the evidence now before us. The defendant has not at any time paid or offered to pay plaintiff for the damages thus sustained.

The defendant justifies under ordinance 15,608, approved the fourteenth of April, 1890, the first section of which provides that the Merchants' Bridge Terminal Railway Company and the defendant "are authorized to lay down, maintain and operate a switch track to connect with, and for the use of, the St. Louis Union Stock Yards, to wit: Beginning in the west main track of the St. Louis Transfer Railway at a point not exceeding fifty feet north of Bremen avenue, thence southwardly *along the western portion* of Hall street," etc. This section provides further that the northern portion of the switch, including the portion now in question, shall be owned exclusively by the defendant

company, but both railway companies "shall have equal and common rights to the use of the switch." Other sections of the ordinance provide that the switch track shall be laid under the supervision of the street commissioner, and it was laid down under his directions.

The plaintiff has a temporary coal bin at the southwest corner of its property, and has received considerable coal from cars left on this switch track at that place.   There is other evidence to the effect that it has received a few car loads of lumber brought in over this track, though it has a switch of its own, connecting with the Wabash railroad.

1.   A contention made by the plaintiff is that this switch was constructed for private and not public purposes, and that the ordinance is void for that reason. The point is not well taken.   The Union Stock Yards Company is a corporation created for the purpose of establishing stock yards "for the convenience of drovers, dealers, and the public at large," and it conducts and carries on a business in conformity with such declared objects.   This statement is sufficient to show that the stock yards company is engaged in the execution of a public trust, and its property is devoted to public use; and this being so, the switch in question was built for and is devoted to public use.   *Belcher Sugar Refining Company v. St. Louis Grain Elevator Co.*, 101 Mo. 192.   The case in hand is unlike that of *Glaessner v. Brewing Ass'n*, 100 Mo. 508.

2.   The next contention is that the switch was placed in front of the plaintiff's property without warrant or authority of law, because placed on the sidewalk and not on the street.   In other words, the claim is that, by the terms of the ordinance, the track should have been placed in the street as distinguished from the sidewalk.   We do not agree to the proposition.

The word street, as it is generally used, includes the roadway, the gutters and the sidewalks. 24 Am. and Eng. Encyclopedia of Law, 3; 2 Dillon on Municipal Corporations [4 Ed.], sec. 780, and note. It is no doubt often used in a more restricted sense, so as to include only the roadway; but we fail to find anything in this ordinance showing, or indicating, that it was used in any other than its general sense. The ordinance provides that the switch shall be placed "along the western portion of Hall street," and no allusion is made to sidewalks. No sidewalk had been constructed on Hall street, at or near the place in question, when this ordinance was enacted. In our opinion the ordinance does not, by its own terms, restrict the defendant to the roadway.

3.   There can be no doubt that the plaintiff has been damaged and suffers much daily inconvenience from the obstruction placed up to the line of its property, and the next inquiry is whether the plaintiff has any remedy. The statute gives a railroad company the right to construct its road along, or across, a street in a city, the assent of the municipal authorities being first procured; the railroad company must restore the street "to its former state, or to such state as not unnecessarily to have impaired its usefulness." R. S. 1889, sec. 2543. The city of St. Louis, in granting the right to lay a railroad track on any of its streets, must act within the limits of this law, and the right is also granted subject to that constitutional provision which provides that private property shall not be taken or damaged for public use without just compensation.

An abutting lot owner has the same right to the use of the street that rests in other property owners and the public at large. Besides this, he has the right of access to and from his lot, which right is special to him. It is an easement appurtenant to his real estate

abutting on the street.   It is private property as much
as the lot itself, and can not be destroyed or impaired
for public use, save by the payment of compensation
therefor.   But he holds this appurtenant right subject
to all legitimate uses of the street as and for street pur-
poses.   The question therefore is, whether the use of
this street for the maintenance and operation of a rail-
road thereon, at the place and in the manner that this
track is being operated, is a new and additional use.
Some, and perhaps many, courts hold that the location
and operation of a steam railroad on a street is subject-
ing the street to purposes foreign to, and inconsistent
with, proper and legitimate street uses; and hence
abutting property owners are entitled to additional
compensation for this new servitude.   This court has,
in a number of cases, asserted a modified rule, which
rule can not be ignored, for many rights have grown
up under it.   Stated in general terms, these cases hold
that, with legislative sanction, a railroad company may
lay down and operate a railroad on a street for the pur-
poses of ordinary travel and transportation; and that
for any necessary incidental injury to an abutting
owner, he has no remedy.   But the rule has been
hedged about with many qualifications, and it is with
these qualifications that we are next concerned.

In *Porter v. Railroad*, 33 Mo. 137, the opinion pro-
ceeds upon the theory that the plaintiff's access to his
property was not affected by the railroad.   A street
can not be used for sidetracks, watertanks, or like
structures.   *Tate v. Railroad*, 64 Mo. 149.   The rail-
road must be laid upon the grade of the street.   *Cross
v. Railroad*, 77 Mo. 320; *Smith v. Railroad*, 98 Mo. 24.
Damages have been awarded to abutting property
owners for a violation of these restrictions.   A city has
no power to authorize such use of a street as will destroy
its use as a public thoroughfare.   *Dubach v. Railroad*,

89 Mo. 488; *Belcher Sugar Refining Co. v. St. Louis Grain Elevator Co.*, 82 Mo. 124. We have also denied the right of a city to lease out portions of a street for huckster stands, it appearing that such use of the street obstructed travel thereon and materially interfered with access to and· from the abutting property. Such a use of a street is considered unlawful, because inconsistent with the rights of the public and abutting property owners. *Schopp v. St. Louis*, 117 Mo. 132. In the very recent case of *Lockwood v. Railroad*, 122 Mo. 86, this court sustained a decree enjoining the operation of a railroad on a street, granted on the petition of abutting property owners. The street was only twenty-four feet between curbs, so that the business of the railroad company and the public could not be carried on there at the same time. The grant of authority to the company to occupy the street was in substance and effect giving to the company a monopoly of the use of the street, and it was held the city had no power to thus destroy the street for the purposes for which it was originally dedicated.

Taking these cases all in all, it is very clear a municipal corporation has no power to grant to a railroad company such use of a street as will destroy its usefulness as a public thoroughfare, or destroy or unreasonably interfere with the right of an abutting property holder, to access to and from his property. Though the city gave its assent to the construction of this railroad track, still the defendant was bound to construct and use the track with due regard to the rights of the public and adjacent property owners. The defendant has no greater rights than others, for in the use of the street it is but one of the public, and must conduct and operate its track accordingly. As said in *Railroad v. Twine*, 23 Kansas, 585: "A railroad company has no higher rights in a highway than an

individual—it may share its use, but can not monopolize it; and the owner of a lot abutting on the highway, and who has special need thereof for ingress to and egress from his lot, is specially damaged by any monopoly of the use of the highway by a railroad company.'' Guided by these principles, it is plain this switch track is an illegal structure, for it in effect deprives the plaintiff of any use of its Hall street front. We have here a virtual attempt to confiscate plaintiff's right of access, which right we have seen is private property. The structure is a public nuisance, and as to the plaintiff it is also a private nuisance, and ought to be removed with all due speed.

As this track was placed there without the plaintiff's consent, and against his will, the fact that plaintiff received coal and some lumber by cars brought over the track, is immaterial. The right to have the track removed is not affected by such use of it.

On behalf of the defendant it is insisted that plaintiff's remedy, if any it has, is an action at law to recover damages, and in support of this proposition we are cited to *Osborne v. Railroad*, 147 U. S. 248, and *Gaus & Sons Mfg. Co. v. Railroad*, 113 Mo. 308. What was said in those cases on the subject of equitable relief is not applicable to this case; for we have reached, and before expressed, the conclusion that this track, placed on what is properly the sidewalk, close up to the plaintiff's lot, is an unlawful structure, one which the city did not and could not legalize, as against the rights of plaintiff. The injury inflicted upon the plaintiff is of a continuous character, and the case is one calling for equitable relief. The judgment is reversed and the cause remanded, with directions to the circuit court to award the plaintiff the injunctive relief prayed for in the petition. BARCLAY, J., not sitting. The other judges concur.