137  529
f142 183
137  529
150  464

BROWN *et al.* v. CHICAGO GREAT WESTERN RAILWAY COMPANY, *Appellant.*

Division One, February 9, 1897.

1. **Municipal Corporations**: RAILROAD: USE OF STREETS. The power of municipal authorities to grant the right to a railroad company to lay its tracks along the streets of the city is not absolute; it can not confer such power if the operation of the road will destroy the use of the street as a public thoroughfare.

2. ———: ———: ———: PRESUMPTION. Where, however, a city by its ordinance grants the right to a railroad company to construct its road in a public alley and such privilege is accepted, a presumption arises that the power was properly exercised, and that due regard was had for the rights of the public and the adjoining property owners.

3. ———: ———: ———. Cities can not authorize the use of the public streets for purely private purposes.

4. ———: ———: ———: CONSTITUTION. Under the constitution of Missouri, article 12, section 14, which declares that all railways are public highways and all railroad companies common carriers, a switch track, constructed in a public alley on an established grade by authority of the city connecting with the main line and operated by the railroad company, is for public use; and this is true notwithstanding the ordinance granting the license provided that no cars should be set on the switch except for the use of the adjoining property owners, nor be permitted to remain thereon for any length of time between certain designated streets.

VOL. 137 mo—34

5. ———: ———: ———: ———. The mere fact that a railroad company restricts the use of a switch track to the carriage of property does not make the use of the track private.

*Appeal from Buchanan Circuit Court.*—Hon. A. M. Woodson, Judge.

Reversed.

*Culver & Davis* and *Brown & Pratt* for appellant.

(1) A use is public when the public has a right to enjoy it though it may in fact be enjoyed by a single person or establishment only. The character of a use can not be determined by considering the number who are likely to be accommodated. If a use is open to all on like conditions it is public even though it may be restricted to a particular locality or may accommodate but one or two persons. *Township v. Hackman*, 48 Mo. 243; *Dietrich v. Murdock*, 42 Mo. 279; *Railroad v. Porter*, 43 Minn. 527; *Railroad v. Railroad*, 43 N. W. Rep. 469; *Philips v. Watson*, 63 Iowa, 28; *Wiggins Ferry Co. v. Railroad*, 107 Ill. 450. (2) By act of the legislature cities of the second class are empowered to direct and control the laying and construction of railroad tracks in streets and alleys. Subdiv. 36, sec. 1225, art. 3, R. S. 1889. (3) When the construction of a railroad track on an established grade in a public thoroughfare is authorized by a municipal government having the power so to do, and the track is so constructed, such elements of damage as necessarily flow from its careful operation are not damages within the meaning of section 21, article 2, of the constitution. *Lackland v. Railroad*, 31 Mo. 180; *Porter v. Railroad*, 33 Mo. 128; *Randall v. Railroad*, 65 Mo. 325; *Cross v. Railroad*, 77 Mo. 318; *Railroad v. Railroad*, 97 Mo. 469; *Smith v. Railroad*, 98 Mo. 24; *Gaus Mfg. Co. v. Rail-

*road*, 113 Mo. 308.   (4)   The mere retardation of access to plaintiffs' premises occasioned by the passing of trains over the track was not damages within the meaning of the constitution.   *Julia Building Ass'n v. Bell Tel. Co.*, 88 Mo. 258; *Railroad v. Railroad*, 97 Mo. 457. (5)   If the construction and operation of the track was actionable at all, plaintiffs' recovery should have been made to depend upon the question as to whether or not their property had sustained damages special to it and not shared by it with other property in the same community.   Unless such damages were so sustained plaintiffs were not entitled to recover.   *Rude v. St. Louis*, 93 Mo. 154; *Fairchild v. St. Louis*, 97 Mo. 85; *Van de Vere v. City of Kansas*, 107 Mo. 91.

*Chas. F. Strop* for respondents.

(1) A municipal corporation can not authorize the construction and operation of a steam railroad through a street or alley so narrow that such use will destroy it as a public way and deprive the abutting owner of access to his property.   *Lumber Co. v. Railroad*, 129 Mo. 455; *Knapp, Stout & Co. v. Railroad*, 126 Mo. 26; *Lockwood v. Railroad*, 122 Mo. 86; *Dubach v. Railroad*, 89 Mo. 483.   (2) The spur track or switch complained of in this case was not constructed for public purposes. *Glaessner v. Brewing Ass'n*, 100 Mo. 508.   (3)   The construction of the track and the operation of cars thereon under the circumstances shown in this case, constituted a new and additional use of the alley in question, and plaintiff is entitled to recover.   Elliott on Roads and Streets, 526–530, and authorities there cited.

MACFARLANE, J.—Plaintiffs are the owners of a lot on the corner of Third and Isidore streets in the city of St. Joseph, having a frontage of forty feet on the former

and one hundred and forty feet along the latter. On this lot they have two double dwelling houses, one fronting east on Third street, and the other fronting north on Isidore street. Along the west end of the lot is a public alley twenty feet in width. The west side of the dwelling that fronts on Isidore street comes very nearly to the east line of the alley.

The defendant is a railroad corporation, and maintains and operates a railroad into the city of St. Joseph. Its line and station thereon is located about one block north of plaintiffs' property.

The alley extends from the railroad track south through four blocks and across four streets to Jules street. On the block north of Jules street is located the wholesale house of Richardson, Robertson & Burns. There is also along or near the alley a bottling plant, wood yard, and perhaps other small business industries. Most of the property abutting on the alley is improved.

On the fourteenth day of November, 1891, the council passed, and the mayor approved, an ordinance authorizing the lessor of defendant to construct and maintain a switch, or side track, along this alley from its railroad, south, to the south line of Jules street. The ordinance required the grantee to bring the alley to the established grade and pave it with vitrified brick and keep it in condition for travel. Section 4 of said ordinance is as follows:

"No cars shall be set on this track or switch except for loading or unloading by the adjoining property owners or occupants, nor shall any car be allowed to stand for any length of time upon the portions of said track or tracks embraced by the street or sidewalk lines of Antoine, Isadore, Robidoux, Faraon and Jules streets."

Pursuant to this authority about January, 1893, defendant constructed said track on the established

grade of the city and has complied with all the conditions imposed by the ordinance.

This suit is prosecuted by plaintiffs to recover damages for alleged injury to their property by reason of the running engines and cars over said track.

The petition charges, "that said roadbed was constructed and said cars operated upon and over said roadbed, not for the carrying of passengers, nor the use of the public in transferring freight, but by the defendant it was constructed and operated for the sole use and benefit of certain adjoining and abutting property owners and for the sole purpose of furnishing them a convenient place for loading and unloading their freight, and for no other purpose."

Plaintiffs then set out facts for the purpose of showing that they incurred special and peculiar damages by reason of the premises and asked judgment for $7,500.

For answer defendant pleaded said ordinance in justification of their acts, and alleged that said track connects with the main line of its road extending through said city and is maintained and operated in connection with said main line as a switch or sidetrack.

The evidence for plaintiffs tended to prove that engines and cars were run over this track almost daily between the line of defendant's road and said wholesale house, causing a jarring of their buildings and the falling of smoke and cinders in and about their premises. It also tended to prove that the passage of cars interfered with the egress of plaintiffs to their premises by way of the alley. It tended to prove further that the transportation on said track was confined exclusively to freight received from or delivered to said wholesale house, and the factories located on or near the alley. There was no evidence of the violation of section 4 of said ordinance or that cars had been per-

mitted to stand upon the track, except when being loaded or unloaded, or that they had been permitted to stand on the track opposite plaintiffs' property for any purpose.

Defendant's evidence tended to prove the facts stated in its answer. It also showed that consignments of freight were received in the cars brought in on this track from any one offering them, and were carried, not only over its main road, but, if the destination required, over any other road to which they could be delivered. So likewise they were carried from distant points and delivered, if desired by the consignee, upon this track.

At the conclusion of the evidence the court was requested by defendant to direct a verdict in its favor which the court declined to do, remarking as a reason therefor: "I believe thoroughly that it is a private switch. I think all the evidence shows it, and I think it is conclusive, and the ruling will be that way, and the instruction will be refused."

For plaintiffs the court gave the jury this instruction:

"The court instructs the jury that the defendant has no right in law to construct or operate the railroad track in the alley in evidence, and that they will find for the plaintiff, provided they believe from the evidence in this case that the construction and operation of said railroad track rendered the possession of the plaintiff's property less valuable than it was prior thereto; if the jury find for the plaintiffs, they will assess their damages at such sum as they may believe from the evidence the reasonable rental value of said property was depreciated by said construction, and operation of said railroad track, from the time thereof up to the institution of this suit, to wit, April 13, 1893."

The jury rendered a verdict for plaintiff for $38

and after an unsuccessful motion for a new trial defendant appealed from the judgment rendered on the verdict.

This suit was brought, tried, and determined upon the theory that the track of defendant's road in question was for private use only, and was, therefore, a nuisance, for maintaining which, by defendant, plaintiffs were specially damaged. This is the cause of action declared upon in the petition; the one to which the evidence was directed in the trial, and which the court passed upon in giving and refusing instructions.

It is argued in this court, however, that though the switch track may be for a public use the city had no power to authorize its construction and maintenance in the alley in question for the reason that it destroys the alley for its ordinary use as a public thoroughfare, and deprives plaintiffs of free egress from the alley to their property, and therefore the judgment was for the right party, and should not be interfered with on appeal.

To sustain this contention it must be that the evidence necessary to support one theory will support the other also and evidence necessary to defeat the one will also defeat the other. There must have been a trial of both issues.

If proof of the width of the alley, the improvements thereon, and the public uses made of it, together with the location of the track thereon, raises a conclusive presumption that the ordinary use of the alley, as a public thoroughfare, is practically destroyed, and a monopoly of its use is conferred upon defendant, then we might say that the judgment was right though placed by the court upon the wrong ground.

But the statute gives railroad corporations the right to construct and maintain their roads across and along the public streets of cities, the assent of the municipal authorities being first obtained (R. S. 1889,

sec. 2543), and cities of the second class, to which St.
Joseph belongs, are authorized to direct and control
the construction of railroads in their streets and alleys,
and to require them to be so constructed and laid as to
interfere as little as possible with ordinary travel and
use.   R. S. 1889, sec. 1255, sub-div. 26.

The exercise of the rights and powers thus con-
ferred has received the approval of this court in many
cases.   *Knapp, Stout & Co. v. Railroad*, 126 Mo. 35;
*Lockwood v. Railroad*, 122 Mo. 88, and cases cited in
each.

It is true the power of municipal authorities to
grant to a railroad company the right to lay its tracks
along the streets of the city is not absolute.   They can
not do so if the operation of the railroad will destroy
the use of the street as a public thoroughfare.   *Knapp,
Stout & Co. v. Railroad, supra; Lockwood v. Railroad,
supra; Dubach v. Railroad*, 89 Mo. 483.

In this case the city council of St. Joseph has
exercised the power, and defendant has accepted the
right and constructed its track in compliance with the
conditions imposed by the ordinance for the protection
of the public.   We ought to presume that the action
of the council was right and proper, and that, in grant-
ing the license, due regard was had to the rights of the
public and of the owners of property abutting upon the
alley.   The ordinance and the acceptance thereof make
*prima facie* authority to lay and operate the track and
the burden rests upon plaintiffs to prove that the power
was improperly exercised in this particular case.   The
evidence that would be necessary to prove an improper
exercise of power would be very different from that
necessary to prove that the track was for a private and
not a public use.

The only question presented by this record, there-
fore, is, whether, under the evidence, the switch or spur

track of defendant is for a public use under the constitution and laws of this state.

That the legislative bodies of cities have no power to authorize the use of their public streets for purely private purposes is too well settled to require discussion. Ordinances which undertake to do so are invalid. *Cummings v. St. Louis*, 90 Mo. 263; *Glaessner v. Brewing Ass'n*, 100 Mo. 511; *Schopp v. St. Louis*, 117 Mo. 133; *Lockwood v. Railroad*, *supra*.

But the evidence shows that the switch is a part of the system of tracks controlled and operated by defendant, itself a railroad corporation. These private persons occupying the property along the alley have no control or management of either the switch, the cars, or the business of transportation. The track was constructed by defendant, and the road is operated by it. Consignments of freight are taken over the switch and delivered at their destination or to connecting carriers. Likewise, freight is brought from distant points and carried over this switch and delivered to those requiring delivery thereon.

It is true most of the use made of the track is by those doing business on or near to the alley. The same may be said of all railroads, their customers generally live near the road. The question is not who uses the switch, but who has the right to use it.

But the matter seems to me put at rest by the constitution, when it declares that all railways are "public highways, and all railroad companies common carriers." Sec. 14, art. 12.

Railroad corporations, under the laws of our state, are public corporations and common carriers, and every citizen has the right to demand their service if desired. Defendant is therefore bound to receive for transportation goods tendered it by any person, at any place on the line of said switch track, at which it re-

ceives consignments from other persons. *Dietrich v. Murdock*, 42 Mo. 279.

We can not declare that to be a private use which the law makes a public use. Section 4 of the ordinance, in view of the general provisions of the law, can not be construed to limit the use of the track to adjoining property owners, and, if so intended, it would be void as against the constitution and general provisions of the statutes. Art. 2, chap. 42, R. S. 1889.

The evidence shows that at the terminal of the switch provision is made for standing freight cars on private property, where they can be loaded and unloaded if any one desire to use them. Section 4 is therefore intended merely to prevent all unnecessary obstruction of the alley and interference with the right of ingress and egress of adjacent property owners.

Defendant has the right to limit the use of the track to the carriage of property. The fact that no passenger coaches are run over the switch, or that passengers are not received on it, does not make its use private.

We are of the opinion that plaintiffs failed to make out a case under the pleadings and evidence entitling them to damages, and the judgment is reversed. All the judges of this division concur.