MORIE, Respondent, v. ST. LOUIS TRANSIT COM-
PANY, Appellant.

St. Louis Court of Appeals, January 30, 1906.

1. **PLEADING: Negligence: Nuisance:** In an action for damages
caused to plaintiff by reason of having the wheels of his buggy
caught in the switch-plate of the defendant's street railway
track, where the petition was in two counts; first, for main-
taining in the street a switch which was dangerous to persons
traveling along the street, and a nuisance; second, for the negli-
gent maintenance of the switch in allowing it to get out of re-
pair; the plaintiff failed to make out a case on the second count
and it could not be held that the first count, as framed, by
inference alleged negligence, but the plaintiff was held to proof
of a nuisance in order to make out a case.

2. **HIGHWAYS: Nuisances: Public and Private Use: Legislative
Control.** The State holds a proprietary right in highways in
trust for the people and the Legislature in execution of the
trust may authorize structures to be built in them for the
public use even if some kinds of travel are thereby impeded.

3. ——: ——: ——: ——. Such legislative control must
be exercised for the public welfare, and private    structures
which are inconsistent with the primary use of a street as a
public highway cannot be licensed and will constitute a nuis-
ance even if a municipality undertakes to license them.

4. ——: ——: ——: ——: **Limit of Authority.** Where
the right of people to travel the streets, and of the abutting
owners to have ingress and egress are protected, the discretion
of municipal officers when authorized by the Legislature, is
otherwise unlimited, in allowing the construction of railway
tracks and necessary appliances in the streets, provided they
are constructed and maintained with ordinary skill and care.

5. ——: ——: ——: ——: **City of St. Louis.** The city
of St. Louis, under the general statutes and under its charter,
is granted authority to license and regulate railway tracks in
its streets, and to direct how they shall be constructed and
maintained, and where a switch was erected on a street in said
city pursuant to a license from the city, the switch was prima-
facie a lawful occupation of the street, and where one sued the
street railway company for damages incurred on account of
such switch the burden was on him to prove that it was out
of repair, or was not a safe appliance and was so dangerous to
travel as to constitute a nuisance notwithstanding the license.

6. ——: ——: ——: ——: **Prima-Facie Case.** In an action for damages caused to plaintiff by reason of having his buggy wheel caught in a switch frog, an agreed statement of facts which said that the switch frog was "liable to catch and hold vehicles such as plaintiff was riding in" did not make out a prima-facie case of nuisance in maintaining it so as to authorize a recovery for the damages received, because it failed to state an extent of harm which would constitute it a nuisance.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

REVERSED.

*Boyle & Priest, George W. Easley* and *Glendy B. Arnold* for appellant.

That which the Legislature constitutionally authorizes, as the building of a street railroad in a public street, cannot be a nuisance per se. Randle v. Railroad, 65 Mo. 332; Railroad v. Commonwealth, 73 Penn. 38; Glaessner v. Brewing Association, 100 Mo. 514; Tate v. Railroad, 64 Mo. 158; Porter v. Railroad, 33 Mo. 128; Lackland v. Railroad, 34 Mo. 259; Gates v. Railway, 111 Mo. 28; People v. Kerr, 27 N. Y. 188.

*C. A. Schnake* and *O. J. Mudd* for respondent.

The instructions given on behalf of plaintiff correctly declare the law applicable to the case, and, therefore, those refused to the defendant were correctly refused. Keitel v. Railroad, 28 Mo. App. 657; Grieveaud v. Railroad, 33 Mo. App. 458; Powers v. Ins. Co., 91 Mo. App. 55; Elliot on Roads and Streets, sec. 802, p. 871; Id., sec. 811, p. 884; Booth on Street Railways, sec. 58, p. 83; Id., sec. 292, p. 393; Fitts v. Railroad, 59 Wis. 323; Alton H. R. & C. Co. v. Deitz, 50 Ill. 210; Cook v. Railway, 125 Mass. 57; Rockwell v. Railroad, 64 Barb. 448, 83 Tex. 82; Schild v. Railroad, 133 N. Y. 449.

GOODE, J.—This action was brought to recover the damages sustained by plaintiff from a personal injury for which he says the defendant is answerable. From a judgment in his favor, the defendant appealed. The accident happened near the intersection of Pine and Twelfth streets in St. Louis. The former of those streets runs east and west and the other north and south. The defendant company has two street railway tracks on Pine street. These tracks are parallel; the south one being used by east-bound cars and the north one by those bound west. On Twelfth street there are likewise double tracks, of which the one on the east side of the street is used by north-bound and the one on the west side by south-bound cars. These several tracks are so connected that cars can be diverted from one street to the other, thereby changing the direction of their movement. Cars coming along the east track on Twelfth street from the south, turn from that track into Pine street and proceed eastwardly along the south side of Pine, and cars going westwardly on Pine turn northward at Twelfth. The transfer of cars from one track to another is accomplished by means of a movable switch; or, as the device is sometimes called, a "frog" or a "switch plate." This appliance consists of an iron bar or "tongue," eleven feet long, immovably joined to one of the iron rails of the track at its butt and tapering thence to an edge which moves horizontally over a short arc and from a rail of one track to a rail of another. When a car reaches the end of the tongue, its wheels can be deflected by the tongue around a curve onto a track on the street intersecting the one it was on before. Such appliances are in common use and their shape and operation are familiar to persons accustomed to use street cars. The one which caused the accident to plaintiff lies on Pine street just east of Twelfth, its edge pointing eastwardly on Pine. Plaintiff was hurt in this way: He was riding in a buggy with his brother, who was driving the horse. They came eastwardly along Pine street from Fourteenth

street, which runs parallel to Twelfth and two blocks west. The tires of the buggy were about one inch and a half wide, and that was the width of the space between the tongue and the rail immediately north of it. While plaintiff and his brother were driving in a trot, one wheel of their buggy caught in this space and was clamped between the tongue and the rail firmly enough to stop the vehicle suddenly and eject plaintiff from it to the granitoid pavement of the street and hurt him.

The petition first filed counted on negligence.

The case was tried on an amended petition of two counts or paragraphs. The first of these, after describing the arrangement of the car tracks at the crossing of Pine and Twelfth streets, and the shape, construction and operation of the switch, stated the ground of defendant's liability as follows:

"That the tongue or switch was so constructed and arranged as that the wheels of vehicles, such as are in common use in the city of St. Louis, upon being driven along, upon, and over said Pine street at and near the same, were liable, in the ordinary course of travel by such vehicles, to become wedged into the openings or apertures or interstices of said frog or switch plate and the space between the same and the rails of the said track, and to become suddenly caught, seized and firmly held as if in a vice, so as to cause such vehicles to become suddenly and immediately stopped and firmly held. That such machine, so made and constructed, was a nuisance and a danger and menace to persons driving in vehicles upon the street at and near the same. That the plaintiff while riding along said Pine street in an eastwardly direction in an ordinary four-wheel vehicle, at the time belonging to and being driven by plaintiff's brother, and while being driven with ordinary care for the safety of its occupants, and without knowledge or notice to plaintiff or his said brother of the dangerous character of the said machine, drove upon and over the said machine at an ordinary trot and rate of speed; that while so driv-

ing, his wheel was suddenly and without warning caught by the said frog or switch plate and so firmly held as to cause the vehicle to immediately and suddenly stop; so that by the force and momentum of plaintiff's body, from the speed and velocity with which he was moving, and the sudden stopping of his vehicle so caught, seized and held by the said frog or switch plate, plaintiff was thrown with great force and violence out of his vehicle and upon the granite and rock-paved surface of the street."

In the second paragraph of the amended petition, the ground of liability stated was negligence.

The several forms in which the case was pleaded bear on the contention of the plaintiff which is earnestly pressed, that the first count of the amended petition states a case of negligence; or may be regarded in that light, if negligence on the part of the defendant must appear for the verdict to stand.

The original petition charged negligence and looked towards proof that the plaintiff's injury was due to a negligent tort. The allegations were that the wheel of the buggy became wedged between the switch plate and the rail, because the switch was negligently constructed and maintained, and that plaintiff's injury was caused by the carelessness of defendant, its agents and servants, in constructing and maintaining it.

In the second count of the amended petition, the ground of recovery stated was negligence in the maintenance of the switch, allowing it to become worn, warped, irregular and uneven, and not oiling it so that the wheel of a vehicle would turn in it. The trial court sustained a demurrer to the evidence offered in support of the second paragraph and submitted the case to the jury on the evidence to prove the first paragraph; thus holding in effect that there was no evidence from which to infer that defendant had been remiss about keeping the switch in good order, or to show plaintiff was in-

jured in consequence of neglect. All the testimony is before us and after an attentive perusal of it, we concur in this conclusion of the learned circuit judge. No witness gave testimony tending to prove the switch was out of repair in any particular, or needed oiling.

The first paragraph of the amended petition says nothing about negligence or want of care, and uses no equivalent expression in laying the basis of recovery. Therefore, it is reasonable to presume that plaintiff alleged whatever negligence he relied on in the second paragraph; the essence of which was that defendant had failed of due care. The essence of the case stated in the first paragraph, is not careless arrangement, construction or maintenance of the switch; but that, as constructed, the machine was dangerous to persons traveling along the street in vehicles, and a nuisance. There is no statement that it was a public nuisance; but if a nuisance at all, considering its location in a much-traveled street of a large city, it must have been a public one, being as likely to injure one person as another. The argument addressed to us is that it was a careless act to put such an appliance in the street, and that as facts are stated sufficient to constitute a case of negligence, it is immaterial that the pleader omitted to characterize the act as negligent. Our opinion is that the inference of negligence from the facts stated is far from irresistible. We state now the proposition which we will argue in the course of this opinion; to-wit; that defendant is not liable absolutely for keeping an appliance in the street which in some measure increased the danger of travel; but only if it kept a wrong appliance (i. e., one unsafe as compared with others in use) or the right one in a wrong condition; and that whether it did either of these things or not depends on circumstances; such as the necessity for the switch, the authority under which it was laid, the degree of risk it entailed, the care employed to minimize the risk, and especially to arrange

the appliance, if possible, so that it would play over so narrow an arc that wheels would not be caught between it and the rail next to it. The first paragraph of the petition does not count on such facts, or others which would support the ruling that the case stated is for negligence, general or special; nor does it use the word negligence, or one of similar import. The thought the pleader sought to express in that paragraph was, that the switch was a nuisance in the street, regardless of the care employed in making or maintaining it; whereas in the second count negligence was expressed. This was the trial court's understanding of the petition and the theory of the instructions.

The defendant's answer contained a general denial, a plea of contributory negligence and the further plea in bar, that the switch appliance was the best and most approved device and construction known or in use, and defendant had the right, under an ordinance of the city of St. Louis and the laws of the State, to place and keep it where it was as a means of handling cars.

A reply, in the form of a general denial, was made to the pleas in bar set up in the answer. The following stipulation of facts was put in evidence by the plaintiff:

"It is agreed first, that the city of St. Louis has granted defendant the right to lay its tracks and appliances in said Pine and Twelfth streets and to operate its cars over the same.

"Second. That under its said franchise defendant laid this particular switch in Pine street where plaintiff was thrown from his wagon.

"Third. That said switch, on account of its design and construction, is liable to catch and hold vehicles such as plaintiff was riding in at said time if such vehicle is driven upon and over such switch.

"Fourth. That by the foregoing stipulation defendant is not to be precluded from proving if he can that such switch in question was necessary for the operation

of its cars on said streets, nor that such switch was the best device for that purpose and in general use as a device to shift a car from one track to another.

"All such facts and proof subject to objection on the ground of competency, materiality or relevancy."

Plaintiff proved he was hurt in the manner we have stated and what his injuries were, and rested. As we have said, a demurrer was presented by the defendant at the close of plaintiff's evidence and prevailed against the evidence relied on to maintain the case stated in the second paragraph.

In addition to other facts not germane to the points presented for our decision, the defendant offered testimony to prove, that:

"The switch in question was the Lorrane Steel Co's Standard one hundred feet radius switch; and was put in on the 24th day of September, 1901; that the switch was used for the purpose of admitting Tower Grove, Bellefontaine and Park avenue lines of cars from the south on Twelfth street into the east-bound track on Pine street; that it was a physical impossibility to operate cars around the corner of Twelfth and Pine streets, without a switch; that there was no other device than this one known for the purpose of deflecting street cars from one track to another; that all other street railway switches used for the same purpose as the one in controversy were of the same design; that the guard-rail north of the tongue was necessary to keep the cars on the track, that this switch was in good order and repair."

All testimony like the foregoing was excluded and proper exceptions saved. The court instructed that if the jury found the switch was of such design and construction as to be a danger to persons driving on the street in the usual way and in a vehicle like those in general use, and that plaintiff, while driving thus, was injured by the wheel of his buggy wedging between the switch and the rail, the verdict must be for the plaintiff and the defendant's rights and franchises in the

street were no defense. The defendant requested, and the court refused, an instruction that the verdict should be against plaintiff, because it was admitted defendant had the right to construct its railway tracks and the necessary appurtenances thereto in the street, and the entire evidence was that the particular switch was an appliance essential to the operation of defendant's cars and that no other practicable device for that purpose was known. Exceptions were saved to the rulings on the instructions.

On behalf of the respondent, it is contended that if the appliance in question, when laid in the street, was of such construction and character as to be likely to catch and hold the wheels of vehicles of the kind in ordinary use in the city of St. Louis, and thereby endanger the persons who might be driving in such vehicles with ordinary care, and thus render the street at such place unsafe, and plaintiff, while driving in such a wagon with ordinary care, was thrown out and injured by reason of his wheel being suddenly caught and held in said switch, then the defendant is liable.

On behalf of the defendant it is contended that notwithstanding such facts, as it had the right from the city to lay its tracks and appliances in said Pine and Twelfth streets and to operate its cars over the same, and under its said franchise had laid this particular switch on Pine street, and under evidence that said switch was an appliance necessary to the operation of said railroad, and that it is the best device for the purpose known and no other can take its place, the defendant is not liable.

Plaintiff relies on the doctrine that as streets and roads are intended primarily for the use of the populace in going about, it is unlawful to put structures in them which impede or endanger locomotion, and whoever does so must answer for any damage that results. This proposition is rather an expression of the pervading purpose of the law, than a useful rule for the deci-

sion of controversies likely to arise over obstructions in streets; for in such litigation, a right to maintain the obstruction is usually asserted by virtue of legal rules which are sometimes spoken of as exceptions to, but are in truth modes of enforcing, the general principle that all private uses of streets must be subordinate to the public use. City streets contain various structures not owned by the municipality but by private companies, which make some kinds of locomotion more difficult and hazardous; and, in a sense, the privileges of the owners of these structures take precedence over the free use of the streets by the citizens. Such are the tracks of surface and elevated railways, trolley, telegraph and electric wires and poles, crossing-gates, piers, abutments, piles of building material and manholes for access to underground conduits. Some prerogatives go with these structures; for instance, the right of way which street cars have on railway tracks as against other vehicles. Such private structures in streets are tolerated, of course, because, though attended with some risk and inconvenience, on the whole, they help instead of hinder transit and subserve the chief purpose for which thoroughfares are opened. To secure this service, individuals must submit to particular losses and inconveniences. It was said by the Supreme Court of Missouri in treating a question akin to the one for present decision, that every use of a highway is, in a sense, an obstruction, and that a wagon or other ordinary vehicle occupying a space in it, partially obstructs the highway for a time; that such an obstruction in the customary mode, is entirely legitimate and affords no right of action to a person damaged by it; but, that if the highway is occupied an unreasonable time by the vehicle, or in an improper manner, an action will lie; not because the occupation is in itself illegal, but because it becomes so from the mode in which it is done. The substance of those remarks was stated in one of several cases for damages, instituted many years ago against railway

companies by the owners of lots abutting on streets on which railway tracks had been laid, and in which the liability of the companies for damage done by the operation of their lines, was strenuously urged. Turning from the instance of an ordinary vehicle in the street, to the instance before it of railroad tracks, the court said that as the railroad company had been licensed by competent authority to use the street, it was answerable to the plaintiff only for using it in an illegal manner. [Lackland, Admr., v. N. Missouri R. R. Co., 34 Mo. 259.] That decision suggests the doctrine of law which really dominates the decision of causes like this one; namely that the State holds a proprietary right in roads and streets in trust for the people; and to perform the trust, the legislative branch of the State, is allowed such control over those thoroughfares that it may authorize structures to be built in them for the public use, even if some kinds of travel are thereby impeded. Many structures in streets, which otherwise would be nuisances because impediments to travel, are lawful if put there under a legitimate license. [Elliott, Roads and Streets (2 Ed.), sec. 651, and cases cited; Cooley, Torts, 615.] Such erections, when placed by an individual or private corporation acting with due authority, resemble in their legal aspects, alterations and improvements made on the streets by the municipality itself, pursuant to its charter powers. [Cooley Cons. Lim. (6 Ed.), p. 256.] In neither instance, prior to the adoption of the present Constitution, did an action lie for consequential damages if reasonable care and skill were observed in selecting, placing and maintaining the structure, unless the statute made provision for compensation to individuals specially damaged. [St. Louis v. Gurno, 12 Mo. 414.] These rules have been applied frequently in actions for damages against steam and street railway companies for laying their tracks in the street; railways of both sorts being regarded as a public use of the thoroughfare and not a perversion of it to private uses, nor

within the constitutional provision that private property cannot be damaged for public use without making compensation. [Gaus Mfg. Co. v. Railway, 113 Mo. 308, 20 S. W. 658; Porter v. Railway, 33 Mo. 128; Tate v. Railway, 64 Mo. 150; Randle v. Railway, 65 Mo. 325; Kansas City v. Railway, 85 Mo. 263; Ransom v. Railway, 104 Mo. 375, 16 S. W. 416.] Most of the cases in which the question was involved were for damage to property abutting on the street where the track was laid; the damage being the result of smoke, the jarring movements of trains, interference with travel or preventing access to the property from the thoroughfare. Sometimes the redress asked by the plaintiffs was compensation for their injuries, and sometimes an order restricting the building or operation of the railroad. The court regarded these petitions as proceeding on the theory that a railway in the street, in consequence of the various kinds of annoyance caused by it, was a public nuisance, and that the complainants especially suffered from it. Cases are infrequent in which as in the present one, damages were asked for an injury sustained from a railway track or appliance in the street; but there is one case among the reports of our Supreme Court decisions which is directly in point and will be cited. However, those decisions in which damage to abutting property was the subject of adjudication, involved the same question; namely, under what circumstance a railway company is responsible to private parties for damage done by the construction and operation of its line in a public street under a legal license. This question is identical with the inquiry regarding the extent to which the Legislature, or a city to which the Legislature has delegated control over the streets, may authorize the placing of obstructions to travel in them. The legislative or municipal control is not absolutely unlimited. As intimated, it must be exercised for the public welfare and to promote the enjoyment of the easements that the populace have in the street. Hence, private structures

which are inconsistent with the primary use of the street, cannot be licensed and will constitute a nuisance even if the municipality undertakes to license them. [Glaessner v. Brewing Ass., 100 Mo. 508, 13 S. W. 707; Schopp v. St. Louis, 117 Mo. 131, 22 S. W. 898; Berry-Horn Coal Co. v. Scruggs-McClure Coal Co., 62 Mo. App. 93.] Another restriction on the power of the city is, that no structure which practically prevents the use of the street for travel, or access to abutting property, will be tolerated. This doctrine has been affirmed in numerous cases from the earliest decisions on the subject. [Lackland v. Ry. Co., 31 Mo. 181; Dubach v. Railway, 89 Mo. 483, 1 S. W. 86; Lockweed v. Railway, 122 Mo. 86, 26 S. W. 698; Knapp, Stout & Co. v. Railway, 126 Mo. 26, 28 S. W. 627; Sherlock v. Railway, 142 Mo. 172, 43 S. W. 629.] It has been held that property-owners will be heard to complain of a railroad track laid under a license from the city, but on an embankment instead of the natural surface of the street, and of depots and depot yards in a street. [Tate v. Railway, and Lackland v. Railway, supra.] The conclusion naturally to be drawn from the points in judgment in the reported cases is, that a railway company is not responsible in damages for injury done to a person by its tracks, and the necessary appliances used in connection therewith, when placed in a street under a municipal permit, except when the structures practically prevent travel in the street or the enjoyment by the owners of ground on it of their lots or some appurtenant incorporeal right. The right of people to travel on the street and of the owners of abutting ground to have ingress and egress, are absolutely protected by the courts; but the decisions countenance the conclusion that within those limits, the discretion of the municipal officials is supreme, and the protection of people against undue mischief from railway construction in the highways, is intrusted to them; it being understood always that we speak of instances in which the appliances in the street were made

and maintained with ordinary skill and care. [Porter v. Railway, Tate v. Railway, Randle v. Railway, Lockwood v. Railway, Knapp, Stout & Co. v. Railway, Sherlock v. Railway, supra; Schulenburg v. Railway, 129 Mo. 455, 31 S. W. 796; Brown v. Railway, 137 Mo. 529, 38 S.W.1099.] In all those cases the decision was made to turn on whether or not the obstruction prevented travel on the street or deprived property-owners of access to their lot; but remarks occur which indicate that relief might be granted to a person for a grievance somewhat less extreme; as if travel, though not absolutely hindered, was rendered very dangerous or inconvenient. And in Sherlock v. Railway Company, and some other of the more recent cases, there is a note of dissatisfaction with the radical utterances in Randle v. Railway Company, 65 Mo. 325, in favor of the total non-liability of the obstructing company if travel on the street is not destroyed. But generally speaking, the tone of the opinions is that unless the thoroughfare is practically closed to public use and a monopoly of use conferred on the railroad company, or the easements of abutting owners are greatly impaired, redress will not be granted for an injury caused by the tracks. [Brown v. Railway Company, 137 Mo. 529, 535, 38 S. W. 1099.] It has been said that the limitations on the use of streets by steam railways do not always apply to street railways proper. [Placke v. Railway Company, 140 Mo. 634, 41 S. W. 915.] This general doctrine regarding the extent of harm required to make an authorized structure in a street unlawful was reaffirmed in strong language in Siebert v. Railway Company, 188 Mo. 657, a case practically indistinguishable on principle from the one at bar. A railway company had, under authority from the city of St. Louis, constructed in one of the main thoroughfares of the city, a crossing-gate; and in connection therewith had set in the driveway, and on either side of it, some four or five feet from the curb, an iron box, and around the boxes wrought-iron rails or bars. Plaintiff's

husband was killed while driving a fire engine to a fire, by colliding with one of the iron boxes or the rails around it, and the action was instituted to recover damages for his death. The question for determination was whether the structures we have described constituted a nuisance. This question was ruled in the negative because, though the erections withdrew a portion of the driveway from use, they were necessary for the protection of people. The opinion extensively reviews the authorities we have cited and deduces the conclusion that when structures for public use, are erected in a street with the city's permission and according to the discretion of the proper officials, the propriety of this private use of the street is not subject to judicial review or control, unless it is so exercised as to amount to a practical obstruction of the street for street purposes, or to a virtual withdrawal of it from public use. The opinion then points out that there was plenty of driving space left in the street inside the piers or boxes and hence, travel was not prevented.

One conclusion which may be derived from the authorities with certainty is, that, when a necessary railway appliance in a street is complained of as a nuisance, the magnitude of the mischief it entails is vital. Now the city of St. Louis is granted ample authority, not only by the general statutes of the State, but by its charter, to license, control and regulate railroad tracks in its streets and to direct, in the interest of the public, how they shall be constructed and maintained. [R. S. 1899, sec. 1187; Mun. Code of 1901, p. 220.] A street railway is for the public use, and it stands admitted by the agreed facts, that the switch in question was laid on Pine street pursuant to a license from the city of St. Louis. Therefore, the switch was, prima facie, a lawful occupation of the street and the defendant was within its right in maintaining it; provided due care was observed to keep it in good order and to select a reasonably safe appliance if different kinds were available; and

provided further, the danger and inconvenience to the public caused by the presence of the switch in the street were not so great as to make it a nuisance even if authorized by the city. We have already said that negligence is out of the case, because it was neither averred nor proved. There was no evidence to show the switch was out of repair or that any other and safer appliance could have been used. The case for the plaintiff rests on the defendant's admission that the switch's plan or design, was such that it was liable to catch and hold vehicles like the plaintiff's. In our opinion this admission falls short of making a prima facie case. The expression "liable to catch and hold vehicles such as plaintiff was riding in," is indeterminate and of wide meaning. It imparts no information about how often a vehicle would be caught or what consequences would ensue. On the legal effect of the word "liable" in a negligence case, see Chandler v. Gas Co., 174 Mo. 321, 73 S. W. 502. In the present instance plaintiff was hurt; but perchance in many instances no harm would result from the catching, beyond a twisted or broken wheel. But with what frequency would the switch cause accidents? The evidence gives no answer to this inquiry, nor was the jury instructed to consider it. They were instructed to determine simply whether the switch was a source of danger to persons driving carefully in vehicles in common use. Railway tracks are a source of some danger to such persons; for it is not uncommon for the wheels of a vehicle to be wrenched off in driving diagonally over tracks, and occasionally some one is thrown to the ground in that way and hurt. Such occurrences happen with comparative frequency in driving over the intersections of ordinary switches or of side tracks with main lines. Freight wagons often get caught in street car tracks. Those incidents must be borne with, for the sake of the public service rendered by the railways. As we have stated, the lawfulness of the obstruction depends on the necessity for maintaining it, its utility,

and the degree of inconvenience and danger it entails. And this is recognized in the decisions on the subject, despite the broad propositions often declared. Of course, the need to maintain an appliance is to be considered. Its danger may be so great that no necessity will justify its use. Comparisons must be instituted. A given implement may be somewhat dangerous, but not too much so to be used, if there is nothing safer; when, if a safer one can be obtained, it would be remiss to use the other. But this latter consideration would come up, only in a case for negligence in choosing an inferior appliance. The present case does not require us to commit this court to any extreme doctrine regarding what structures in a street are permissible. Without doing so, we need not hesitate to declare that no evidence was adduced tending to show the switch in question was either unnecessary, or obstructed or endangered travel to an extent which rendered its presence in the street a nuisance, as alleged, and thereby made defendant answerable, as a tortfeasor, to plaintiff.

We are cited by the plaintiff's counsel to several cases supposed to maintain the liability of the defendant. [Keitel v. Railway, 28 Mo. App. 657; Griveaud v. Railway, 33 Mo. App. 458; Powers v. Insurance Co., 91 Mo. App. 55.] All those cases rested on the theory that the defendant companies had been guilty of negligence in the construction and maintenance of the obstruction which inflicted the damage, and the opinions are to be interpreted with reference to the circumstances before the court. It is true enough, as said in the Keitel case, that street railway companies are answerable in damages for injuries done to travelers by the nuisances they create in the streets; but we have pointed out that, under all the authorities on the subject, a given appliance duly licensed, cannot be held to be a nuisance simply because it does some harm; but that the measure of the harm done by it is the criterion of whether it is a nuisance or not, and that the courts appear to hold it is no

nuisance for which an action will lie, unless the harm is so great as to deprive the public of the enjoyment of the street. We have no occasion to go that far in order to dispose of the present controversy. Without doubt no case can be found in our reports which would justify us in holding, on the evidence adduced, that the appliance in question was a nuisance which made the defendant responsible. The injury was an accident for which damages are not given.

The burden was on the plaintiff to produce evidence to prove prima facie that there was no necessity for the switch, or that it entailed such great risk as to render it a nuisance and unlawful, despite the fact that it was licensed. It is presumed, until proof to the contrary appears, that the city government paid due regard to the safety of the public in granting the license. [Brown v. Railway Company, 137 Mo. 529, 536, 38 S. W. 1099; Randle v. Railway Company, supra.] The plaintiff having failed to present such proof, the judgment will be reversed. *Bland, P. J.,* and *Nortoni, J.,* concur.