THOMAS, Respondent, v. WYATT, Appellant.

1. Although a patent issued to a person not in existence is a nullity, yet a patent to a person under an assumed name is not void; if such person should, under such assumed name, transfer the land to a purchaser, the title would enure to the latter.

*Appeal from St. Louis Land Court.*

The facts sufficiently appear in the opinion of the court.

*Beirne, Morehead,* and *Buckner,* for appellant.

I. A patent to a fictitious person is void. (25 Mo. 24.) The court should have given the instructions asked by defendant. The instruction given makes the case turn on an issue

wholly irrelevant. The junior patent was to a person capable of taking. The land was subject to sale and the patent issued by legal authority.

*Coalter*, for respondent.

I. The case as it now stands presents questions entirely different from those involved in the cause when on error before. (25 Mo. 24.) The court committed no error in giving or refusing instructions. The defendant, claiming under Samuel Johnson, is estopped to deny his existence.

Scott, Judge, delivered the opinion of the court.

This was an action of ejectment. The plaintiff's title was as follows : From the office of the register in the St. Louis land district on the 19th of August, 1829, there was issued a certificate of entry, numbered 1786, stating that Samuel Johnson, of Kentucky, had entered lot number one, of township forty-five north, in range number five east, containing eighty acres. On this certificate there was an assignment, bearing even date therewith, made in the name of Samuel Johnson to the plaintiff Jas. S. Thomas, which was attested by James Coleman. On this certificate a patent was issued by the United States to Samuel Johnson, dated on the 5th day of January, 1843, and delivered to the said Thomas, who afterwards brought a suit in equity against Samuel Johnson, in which there was a decree vesting Johnson's legal title in him. The only service of process in this suit was by order of publication.

The defendant's title was a patent to Samuel M. Coleman, assignee of Samuel Johnson, dated the 14th of March, 1845, for the tract of land above described, in which it was recited that Samuel Johnson had deposited in the General Land Office a certificate of the register of the land office at St. Louis, whereby it appeared that full payment had been made for the said tract of land by Samuel Johnson. Samuel M. Coleman, the patentee, who was a son of James Coleman, conveyed one-half of the tract patented to him to Isaac

Wyatt, the husband of the defendant. The half of the tract is the land in controversy.

James Coleman, who, it has been seen, attested the assignment of the certificate made by Samuel Johnson to the plaintiff, was a clerk in the register's office. There was evidence that he was a man of bad character, and on that account was discharged from his employment. A number of applications for entries, signed by Samuel Johnson and James Coleman, for the register, were produced, and evidence was given tending to show that they, signatures and all, were in the handwriting of James Coleman. Among these was the application for the entry, numbered 1786, above mentioned. There was some other evidence in the cause assailing the conduct of Coleman in the register's office. Such a man as Samuel Johnson had never been heard of.

The case was tried by a jury, and the court, rejecting all the instructions asked by each party, gave the following : "If the jury believe from the evidence that the patent, purporting to be issued to Samuel Johnson, given in evidence by the plaintiff, dated January 5, 1843, is genuine, and that it was issued upon the certificate of entry under date of August 19, 1829, numbered 1876, also introduced in evidence by the plaintiff; and if the jury shall further find that the patent purporting to be issued to Samuel M. Coleman, as assignee of Samuel Johnson, dated the fourteenth of March, 1845, and which was given in evidence by the defendant, is genuine, and that it was issued upon the same certificate of entry numbered 1876, that the said patent to Samuel Johnson was issued upon, and that each of the said patents covers the same land, then the patent, given in evidence by the plaintiff and the decree of this court also read in evidence, makes a title in the plaintiff superior to the title in the defendant under said patent bearing date March 14, 1845, and the deed from said Samuel M. Coleman to the said Isaac Wyatt, and the plaintiff ought to recover." There was a verdict for the plaintiff.

The ground, on which the defendant repelled the plain-

tiff's right to a recovery, was that Johnson was a fictitious person; that there was no such man in being, and therefore the patent was void, and the plaintiff could not derive any title from it or the patentee. There is no doubt that a patent issued to a person not in existence is void. This was the view taken of this case when it was formerly here. But now we have more light upon it, and although we adhere to the opinion then expressed, we doubt whether it is applicable to the case as it is now presented. The only theory that will solve the question insolved in this litigation (and we think there is sufficient evidence to put it to a jury) is, that Samuel Johnson is an assumed name of James Coleman, and not a fictitious person. If we regard Coleman as usurping the name of Johnson when it suited his purposes, we have a clue by which we may be guided to the justice of this case. We have no doubt that this was the light in which this matter was viewed in the court below, but as the case was tried by a jury we do not conceive that the language of the instruction was sufficiently pointed to direct their attention to the matter really in issue. If James Coleman used the name of Samuel Johnson to designate himself, when he thought proper, and made the entry in the name of Samuel Johnson for himself, merely using that name as he would the one by which he was usually known, and endorsed it in the name of Samuel Johnson with the same view, then the transaction is to be regarded as though James Coleman had used instead of the name " Samuel Johnson" the name " James Coleman." So the patent to Samuel Johnson is to be regarded as to James Coleman and not to a fictitious person. I knew an individual once, who was sued in an action in which heavy damages were claimed, and during its pendency he entered a great quantity of land in his name reversed or spelt backwards. Now no one supposed that, if a judgment had gone against him, that the title had not passed from the United States so that the land would have been subject to the claim of the creditor. So we suppose it is competent to the party here to prove that James Coleman was Samuel

Johnson or James Coleman, just as it suited his purposes; that he was a man who used two names; that to effect his ends he endeavored to make it appear that he was two different persons. It matters not whether it was generally known that he went by two names or not. The law is the same, though he was known by one name only, as though he was known by both. If a man signs a bond by a name by which he was never called or known, or which he had never used before, he would be bound by it. (Carpenter v. Williams, 28 Mo. 460.)

The plaintiff contended that the defendant, claiming under a patent from the United States to Samuel M. Coleman, as assignee of Samuel Johnson, and a deed from said Coleman, is estopped from denying the recitals in said patent and deed that Samuel Johnson purchased the land described therein from the United States and paid for the same, and that Samuel Johnson was the regal person who purchased said land. Without acquiescing in the correctness of this argument, it may be observed that the defendant, by claiming under the patent, is not debarred from any other defence she may have. If her title under the patent fails her, then she may rely on her possession. If she were plaintiff claiming title only under the patent and deed, then it might be necessary to determine the force of this objection.

This case, then, depends on facts to be determined by a jury. These facts are whether James Coleman and Samuel Johnson were not the same identical person, and the name Samuel Johnson was assumed by Coleman to carry out his fraudulent designs. If these facts are found, the plaintiff will be entitled to recover. If, on the other hand, the jury believe from the evidence that the government, in issuing the patent, intended it for another person distinct and separate from James Coleman, and that there was no such person ever in existence, then, in the nature of things, no title could pass by the patent. Reversed and remanded.