# DeGEOFROY et al., Appellants, v. MERCHANTS BRIDGE TERMINAL RAILWAY COMPANY.

### In Banc, February 24, 1904.

1. **Street:** RIGHT OF ABUTTING OWNER THEREIN. The right of the owner of a lot in a city or town to the use of the street and to damages for its obstruction, does not depend on his ownership of the soil under the street. His right flows from the fact that his lot abuts on a public highway.

2. ——: ——: COMPENSATION. The owner of property abutting on a public street has an easement therein of light, air, and access to and from his property by means of said street, and this easement is property of which he can not be deprived without just compensation.

3. ——: ——: ——: ELEVATED STEAM RAILWAY. An elevated steam railway, built by consent of municipal authority, on permanent structures in a public street, which interfere with and deprive the owners of lots abutting on the street of their easement of free access to and from buildings on the lots, and deprive them of light and air, is an additional servitude, and one not contemplated when the street was established for public use, and for any depreciation in the value of the lots caused thereby, the owners of the abutting property are entitled to compensation.

   *Held*, by VALLIANT, J., dissenting, that there is no difference in principle in the servitude to which a public street is subjected between a steam railroad constructed on the surface of the street, and an elevated road resting on permanent iron pillars placed in the street; and that either the old rule that grade roads are not a new servitude should be no longer followed, or the rule that the abutting property owners are entitled to compensation for the damage to their property caused by the new servitude, should not be made to apply to elevated roads.

4. ——: ——: ——: RAILROAD ON GRADE: STARE DECISIS. Were it a new question the court would be inclined to hold that a steam railroad constructed in a public street on its grade, whose trains emit steam, smoke and cinders in front of an abutter's

property, and produce noise and danger to customers, is a servitude never contemplated in the dedication of a street to public use; but the holding to the contrary has been too long maintained and too many rights have been vested on the faith in it, for the court to now disturb it, and the doctrine of *stare decisis* must control as to surface roads. But there is no sound reason for extending the rule to elevated roads.

5. ——— : ———: ———: LIMITATIONS: FIVE YEARS. A suit by the abutting property owner for damages to his property caused by the construction of an elevated steam railroad in the public street in front of his lots, is barred in five years after the obstruction became permanent and complete.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED.

*Sale & Sale* and *David Goldsmith* for appellants.

(1) Abutting owners are entitled to compensation for damages to their property, occasioned by the construction and operation of railroads in public streets, when the railroad is not constructed upon the grade of the street. Sherlock v. Railroad, 142 Mo. 183; Tate v. Railroad, 64 Mo. 158; Cross v. Railroad, 77 Mo. 322; Smith v. Railroad, 89 Mo. 24; Knapp-Stout & Co. v. Railroad, 126 Mo. 135. (2) Defendant is liable to plaintiffs for the injuries to their abutting property by reason of the construction and maintenance of defendant's elevated railway. Storey v. Railroad, 90 N. Y. 122; Lahr v. Railroad, 104 N. Y. 269; Abendroth v. Railroad, 122 N. Y. 1; Kane v. Railroad, 125 N. Y. 186; Doane v. Railroad, 165 Ill. 510; Stewart v. Railroad, 166 Ill. 1; Railroad v. Webster, 81 Md. 529; Railroad v. Hibernian Soc., 84 Md. 420; Bank v. Railroad, 28 Fed. 231; affirmed 135 U. S. 432; State v. Superior Court, 66 Pac. 385; Transfer Co. v. Seattle, 68 Pac. 90. The authorities last referred to have been expressly approved in this State in Sheehy v. Railroad, 94 Mo. 597; Mfg. Co. v. Railroad, 113 Mo. 315. (3) If plaintiffs

have no constitutional right to the compensation sued for, they nevertheless have a statutory right thereto. Laws 1887, p. 39; R. S. 1889, secs. 6116, 6117. (4) Plaintiffs are entitled to sue for the damage of their property as compensation due them under the constitutional provisions for the taking of their property. Allen v. Railroad, 84 Mo. 646; Webster v. Railroad, 116 Mo. 114; Railroad v. Matthews, 99 Ala. 24; Railroad v. Fox, 42 Kan. 490; Railroad v. Ingram, 30 S. W. 8; White v. Railroad, 113 N. C. 610; Railroad v. Ziemer, 124 Pa. 560. (5) The action herein is not barred by the statute of limitations. Railroad v. Ziemer, supra; Doyle v. Railroad, 113 Mo. 280; Webster v. Railroad, supra; Galway v. Railroad, 128 N. Y. 145; Organ v. Railroad, 51 Ark. 265; Railroad v. O'Harra, 48 Ohio St. 343.

*John H. Overall* for respondent.

(1) Under the decisions of the courts of this State the construction and operation of a railroad on the public street of a city, whether such railroad is propelled by horse or steam power, and whether upon the surface of the street or above it on what is known as an elevated road, does not, unless improperly constructed or negligently operated, give a right of action for damages to the abutting owner. (2) Under the fourth subdivision of section 4273, Revised Statutes 1899, plaintiffs are barred by the statute of limitations from sustaining this action. (3) Plaintiffs, having stood by and seen defendant expend many hundreds of thousands of dollars in the erection of the elevated portion of its railway, without objection or complaint, and having for more than nine years permitted defendant to operate its railroad without asserting their rights, if any, are not now entitled to relief in equity by injunction. (4) Plaintiffs' action, if any, is at law, where damages may be assessed by a jury, and is not in equity.

GANTT, J.—This is an action by plaintiffs who are abutting owners of real estate on Front street in the city of St. Louis for damages to their said realty, occasioned by and resulting from the construction and operation of an elevated steam commercial railroad along and over said Front street in front of plaintiffs' lots. In the circuit court a demurrer to the petition was sustained on the ground that it did not state facts sufficient to constitute a cause of action. The propriety of that action by the circuit court presents the sole and only question for our determination at this time.

Omitting caption, the plaintiffs allege that the defendant is a railroad corporation, engaged as a common carrier, operating a steam railroad with locomotives and cars at and in the city of St. Louis. That plaintiffs are now and for many years have been the owners in fee simple of a lot in City Block 5 fronting 76 feet on the west line of Wharf or Front street in the city of St. Louis with a depth of 75 feet, on which lot there were at all the times mentioned in the petition and are now erected three substantial four-story brick buildings known as numbers 203, 204 and 205 South Levee or Front street. That plaintiffs acquired the said lot and premises prior to the year 1890, and have owned, and occupied the same by themselves and their tenants, continuously since April, 1890. That said Front street, known as the Levee or Wharf, is and was for many years prior to the construction of defendant's said railway as hereafter set out, a public street and highway of the city of St. Louis, and held by said city in trust for the maintenance thereof as public streets are generally used and maintained; that plaintiffs were and are seized of an easement in said street and are entitled to have the same kept and used as a public highway and to be protected from unusual and extraordinary interferences with the light, air and access to and use of their premises not occasioned by ordinary street uses; that as an incident and

appurtenant to plaintiffs' ownership of said premises, plaintiffs, at least until condemnation, compensation, or purchase, have and had in said Front street the right and easement to its free and unimpaired use, for the uses and ordinary purposes of a public street or highway, and to exemption from noise, smoke, soot, dust, cinders, obstructions and unusual impairment of the easements of light, air and access and ingress and egress to and from said premises, etc. That defendant's structure and the operation of its engines and cars on said street in front of plaintiffs' premises are of a permanent and continuous nature. The petition avers that the railroad of the defendant was an elevated road, the superstructure of which rested upon iron columns which were erected perpendicularly to a height of from fifteen to twenty-five feet above the surface of the street or sidewalk; that these columns supported cross-girders or frame work, upon which were laid four single railroad tracks, or two double railroad tracks, and that the railroad of the defendant has ever since the erection of the structure been, and still is, operated upon these tracks; and that the superstructure extends out on either side, so that the western line thereof approaches the eastern or building line of plaintiffs' premises within twelve feet, more or less; that these structures are of a permanent nature, and are built and intended by the defendant to be used permanently for the transportation of freight and passengers; "that large numbers of freight and passenger trains daily pass in front of plaintiffs' premises, and produce a flickering and darkening of the light, and deprive and have hitherto deprived plaintiffs of the beneficial use of such light as comes to said premises, and interferes with the air, ventilation and access to said premises, and the privacy thereof; that said structure, as it now exists, and as above described, has been erected and maintained without legal right, and is a special injury to plaintiffs and their premises; that the operation of said railroad is not an ordinary street use of said

street authorized by law; that on the road thus construc-
ted, the defendant every day ran, and still does run,
many trains of cars; that said railroad and structure
greatly obstructed, and still do greatly obstruct, said
premises and the passageway to and from said build-
ing; that they excluded, and still do exclude, light and
air from the same; that the trains made and still do
make, loud and disagreeable noises, caused and still do
cause vibrations of the buildings erected on said prem-
ises, whereby the security of such buildings is greatly
impaired and their strength lessened, and injured, and
still do injure said buildings, and said trains and said
structures injure and impair plaintiffs' easements of
light, air and access; that the value of the use and occu-
pation of said premises has thereby been greatly dam-
aged."

The petition further avers that the aforesaid struc-
ture and the railroad of the defendant impose a new and
additional burden on the property of the plaintiffs, and
one which was not within the power of the city of St.
Louis to authorize without compensating plaintiffs for
their property thus taken and damaged; that no compen-
sation has ever been made for the aforesaid taking and
damage of plaintiffs' property; that the rental value of
said property has been greatly damaged, to-wit, to the
extent of $2,500 per annum, by the construction and op-
eration of defendant's railroad in said street; and that
the property itself has been permanently damaged in
the sum of $25,000.   That the city of St. Louis did here-
tofore, to-wit, on July 9, 1887, adopt an ordinance which
undertook to authorize the construction of defendant's
railroad, and the use of the streets therefor, which said
ordinance is set forth in full in the petition, and which,
among other things, required the construction of said
railroad to be commenced within one year after the ap-
proval of the ordinance and to be completed within five
years from February 3, 1887, and which said ordinance
was subsequently amended by another ordinance, ap-

proved December 21, 1889; that the defendant, with the view of availing itself of the provision of said ordinance and claiming to act under the same, has constructed its road as aforesaid, and that the said ordinance is in conflict with article 2, section 21, of the Constitution of this State, and also in conflict with article 2, section 30, of the Constitution of this State, and also in conflict with the Fourteenth amendment to the Constitution of the United States; "that plaintiffs' property has been taken and damaged for the uses of defendant's railroad as herein set out without just compensation; that plaintiffs have been deprived of their property by the defendant without due process of law;" and that the construction of the railroad of the defendant was completed in May, 1890, and the railroad has been operated ever since that time; and that the operation of the road will continue, unless restrained by order of this court.

The petition then prays that the damages of the plaintiffs may be ascertained and determined, and that they may have judgment therefor, to-wit, for the sum of $25,000; also, that the defendant may be enjoined from further obstructing and encumbering the aforesaid street, and also from maintaining, continuing or operating its railroad and structure in front of the premises of the plaintiffs, and further be required to remove said structure in front of plaintiffs' property, unless, within such time as should be fixed by the court, the defendant pay to plaintiffs a sum of money sufficient to compensate the plaintiffs for their property taken and for the permanent injury and damage done thereto by reason of the aforesaid acts of the defendant.

I.    It is stated by counsel that the action of the trial court in sustaining the demurrer to the petition of the plaintiffs was predicated exclusively on the theory that the cause of action of the plaintiffs was barred by the statute of limitations, in that, it appeared from the face of the petition that the action was not instituted within five years after the completion of the defendant's rail-

way, but this is not disclosed in the record and we can not take notice of the reasons which moved the circuit court to sustain the demurrer.

As said by Judge ANDREWS for the Court of Appeals of New York, in Kane v. Railroad, 125 N. Y. 175, "few questions have come before the courts in this generation of greater practical importance or involving larger pecuniary interests than those growing out of the construction of railways in city streets. Whether such streets may, under legislative and municipal authority, be occupied by railroad tracks, to the inconvenience of abutting owners, without making compensation, and what limitation, if any, there is to the legislative power over streets which can not be transgressed without violating the legal and constitutional rights of lot owners are questions which have excited the gravest debate and have been the subject of the most careful judicial consideration."

Rorer on Railroads, vol. 1, page 515, says that "as to the right of a railroad to run along a public street without additional compensation, American authorities differ so widely that it is impossible to lay down any positive rule of law upon the subject."

A resume of the decisions of this court on this subject will greatly aid us in arriving at a proper conclusion.

The easement of the plaintiffs in Front street is too firmly established to admit of doubt.

In the case of Gaus & Sons Mfg. Co. v. Railroad, 113 Mo. on page 315, McFARLANE, J., says: "It must be conceded by the defendant, because it is too well settled to admit of question, that every owner of a lot abutting on a public street, besides the ownership of the property itself, has rights appurtenant thereto, which form a part of the estate. Those rights are said to be 'as much property as the lot itself.' Of these may be named an easement for the free admission of light and

pure air; and the right of ingress and egress to and from his property. 'Every lot owner has a "peculiar interest in the adjacent street, which neither the local nor the general public can pretend to claim; a private right in the nature of an incorporeal hereditament, legally attached to his contiguous ground; an incidental title to certain facilities and franchises," which is in the nature of property, and which can no more be appropriated against his will than any tangible property of which he may be the owner.' Depriving the owners of these incorporeal hereditaments, *or interfering with their full enjoyment, by appropriating the street to a new and different public use from that originally contemplated, would undoubtedly be a damage within the foregoing constitutional provision. . . . . We think a public use which would interfere with these incorporeal rights, whereby the property was depreciated in value would be a damage to the property within the meaning of the Constitution, and would entitle the owner to compensation.*"

To the same effect: Knapp, Stout & Co. v. Railroad, 126 Mo. 35; Sherlock v. Railroad, 142 Mo. 182; Egerer v. Railroad, 130 N. Y. 108; Sperb v. Railroad, 137 N. Y. 155.

In some of the States the right of the abutting owner to compensation by reason of the construction of a steam railroad in front of his premises has been made to depend upon whether the fee in the street was located in the municipality, or the abutting owners, but in this State the right of the owner of a lot in a city or town to the use of the street and to damages for its obstruction does not depend on his ownership of any of the soil under the street. His right flows from the fact that his lot abuts on a public highway. [Lackland v. Railroad, 31 Mo. 187.]

At an early day in the judicial history of this State it was ruled that the laying of tracks and the operation of a steam railroad *on the grade of a public street or*

*highway* did not constitute a new or additional servitude, and did not warrant compensation for damages resulting to the owners of abutting property. While this is true, as was said by this court in Knapp, Stout & Co. v. Railroad, 126 Mo. loc. cit. 36, it was *"a modified rule,"* "a rule that has been hedged about with many qualifications."

Thus in the very first case (Lackland v. Railroad, 31 Mo. 188), it was said: "We have not observed any case, even where this power is conceded, which allows the erection of depots, or car buildings *or any other structures, which materially obstruct* the use of the street or highway as a public easement."

In that case it appeared that the company built a side track along the main track in the street fronting the plaintiff's lot and a switch track connecting the two others; that these tracks rested on embankments which of themselves entirely obstructed all passage of vehicles over any part of the street. In addition to the three tracks, two switch frames and a cattle-way had also been erected. The side track was used for a standing place of freight and passenger cars. In short, the street was used as a depot yard. Judge NAPTON, in the course of the opinion, referred to the decision of the Supreme Court of Pennsylvania in Com. v. Railroad, 27 Pa. St. 351 (a court which has maintained at all times the absolute control of the State over all its highways), wherein it was ruled that a grant of right of way over and along streets, highways, etc., but with the restriction "not to obstruct or impede their free use," did not authorize the company to place any material obstructions in the streets or highways, and any change of grade, unless the road or street was adapted to the new grade at the expense of the company, was unauthorized, and this court in said Lackland case affirmed a judgment for damages growing out of the said acts of the railway company.

In Porter v. Railroad, 33 Mo. 128, the opinion pro-

ceeded on the ground that the plaintiff's access to his property was not affected by the construction of the road *at grade*.

In Tate v. Railroad, 64 Mo. 149, the Porter case came under review and it was held that the principles announced therein *only applied to a railroad constructed on the grade of the street where the only obstruction is the passage of trains,* and not where embankments have been made above the grade or where the street is used for side tracks or other structures for the convenience of the railroad, and accordingly in the Tate case damages were allowed the abutting owner where the railroad company built an embankment in the street in front of the plaintiff's lot. To the same effect is Swenson v. City of Lexington, 69 Mo. loc. cit. 166; Cross v. Railroad, 77 Mo. loc. cit. 322; Smith v. Railroad, 98 Mo. 24; Dubach v. Railroad, 89 Mo. 488.

In Schopp v. City of St. Louis, 117 Mo. 131, this court held that an abutting owner on a street has equal right with the public to use the street, and in addition thereto, he has certain rights which are special to himself, e. g., that of ingress and egress, and that the city has no power to lease spaces on a street in front of a business houses for produce dealers. Judge BLACK, for the court, speaking of the building of market houses in the streets of a city, quotes Judge DILLON to the effect that "they are nuisances when built upon the streets *although sufficient space be left for the passage of vehicles and persons*" [Dillon on Mun. Corp. (4 Ed.), sec. 383], and says, "The public highways belong, from side to side and end to end, to the public," and "The public are entitled, not only to a free passage along the highway, but to a free passage *along any portion of it,* not in the actual use of some other traveller," "and the abutting property owner has the right to the free and unobstructed passage to and from his property."

In Lockwood v. Railroad, 122 Mo. 86, it was pointed

out that section 2543, Revised Statutes 1889, now section 1035, Revised Statutes 1899, provides that when a railroad builds its tracks in a public street by permission of the city authorities it must restore the street to its former state or to such a state as not necessarily to impair its usefulness, and that the mayor and assembly of the city are restricted in their grant by the Constitution and laws of the State.

In that case while the court felt constrained by the unbroken line of decisions to the effect that a city in this State may permit and authorize by ordinance the laying of a railroad track at grade along its streets, it held that this was not an *unqualified* power and consequently ruled that while the railroad was laid at grade, yet owing to the narrowness of the street and the width of the tracks, the use of the street by the railroad company amounted to a monopoly and exclusive use of the street by the company to the denial of the rights of the abutting owners, and was in effect a taking and damaging their property without compensation, and accordingly affirmed the decree of the circuit court perpetually restraining the company from operating its cars and locomotives on said street.

In Knapp, Stout & Co. v. Railroad, 126 Mo. 37, the Lockwood case was approved, and this court, after reviewing all the above cases, perpetually enjoined the defendant railroad company from operating a switch track in Hall street in St. Louis in front of plaintiff's property and on what would have been the west sidewalk had one been constructed. Judge BLACK, speaking for this court, said: "Taking these cases all in all, it is very clear a municipal corporation has no power to grant to a railroad company such use of a street as will destroy its usefulness as a public thoroughfare, or destroy or unreasonably interfere with the right of an abutting property holder, to access to and from his property."

The petition in the present case presents sharply for the first time in this court the rights of an abutting owner to compensation for the new and additional servitude to which a street in front of his property has been subjected by the construction and operation of an elevated railroad thereon on a permanent structure, such as is described in plaintiffs' petition.

Starting with the unquestioned easement which the plaintiffs have to light and air and access to and from their buildings, and the adjudications of this court already reviewed, can it be said that the proposition is *stare decisis*, and that plaintiffs are precluded from recovering compensation because the defendant's railroad is not a new or additional servitude?

Our opinion is that there is nothing in our decisions up to this time that precludes a recovery, and the point is before us for adjudication in the light of reason and the analogies of the law.

The question is not a new one in our sister States.

Thus in New York the question arose in Story v. Railroad, 90 N. Y. 122. The case is notable, not only on account of the question involved and the thoroughness with which it was considered, but the ability of the counsel who argued it. In that case the trial court found that "the structure of elevated railroad in that case would to some extent obscure the light of the abutting premises; that the passing trains would do this also and would impair the usefulness of the plaintiff's premises; that the line of columns abridges the sidewalks and interferes with the street as a thoroughfare where such columns are located; that the fronts of the buildings will be exposed to observation from passengers in passing trains and their privacy invaded, and these things will be of a continuing character." We quote this finding because it is practically the very things of which plaintiffs in this case complain. DANFORTH, J., who delivered the majority opinion, assumed as the basis of his opinion that the fee to the street was in the city, and

thus, in this respect, the opinion is in harmony with our own on this subject, viz., that irrespective of the title in the street, the abutter had the easement of air and light and access to and from the street until by legal process and upon just compensation, it was taken from him. While conceding that a railroad on grade was not a new servitude, the court said, "Can the street be lawfully appropriated to such a structure (as this) without making compensation to the plaintiff for his easement therein? This is a question of power. If the Legislature has power to authorize such a structure, without compensation, its exercise can not be regulated by the courts. If one road may be authorized to be constructed upon two series of iron columns placed in the street, another may be authorized to be supported upon brick columns, or upon brick arches spanning the street. If a superstructure may be authorized which spans the entire carriageway at fifteen feet above the bed of the street, one may be authorized which spans the entire street, from building to building, thus excluding light and air from the street and from the property abutting thereon. Thus an open street would be converted into a covered way, and so filled with columns or other permanent structures as to be practically impassable for vehicles." TRACEY, J., concurring, further said: "The argument has been pressed upon our attention with great ability that as railroads, like streets, are intended to facilitate trade and commerce, and lands taken for either are taken for public use, the Legislature may, in its discretion, appropriate the public streets of our cities to the use of railroad corporations, and this without reference to the form of their structure or the extent of the injury wrought upon property abutting thereon. This is a startling proposition, and one well calculated to fill the owners of such property with alarm. It can not be that the vast property abutting on the streets of our great cities is held by so feeble a tenure. This court has repeatedly held that such a rule has no application

where the abutting owner owns the fee of the bed of the street; and we are of opinion that in cases where the public has taken the fee, *but in trust to be used as a public street, no structure* upon the street can be authorized that is inconsistent with the continued use of the same as an open public street. The obligation to preserve it as an open street rests in contract written in the statute under which the lands were taken and which may not be violated by the exercise of any legislative discretion. Whatever force the argument may have as applied to railroads built upon the surface of the street, without change of grade, and where the road is so constructed that the public is not excluded from any part of the street, it has no force when applied to a structure like that authorized in the present case. The answer to the argument is that lands taken for a particular public use can not be appropriated to a different use without further compensation; that the authority attempted to be conferred by the Legislature upon the defendant to take exclusive possession of portions of the public street, and to erect a series of iron columns on either side thereof, upon which a superstructure is to be erected spanning the street and filling the roadway at fifteen feet above the surface, thus excluding light and air from the adjoining premises, is an attempt to appropriate the street to a use essentially inconsistent with that of a public street, and in respect to the land in question violates the covenant of the city made with the plaintiffs' grantors, and in respect to lands acquired under the act of 1813 violates the trust for which such lands are held for public use." The conclusion was that an abutting owner had an easement in the street which constitutes private property of which he can not be deprived without compensation; that such a structure as that described in plaintiffs' petition is inconsistent with the use of Front street as a public street; that the plaintiff was entitled to an injunction until compensation had been paid therefor.

In Lahr v. Railroad, 104 N. Y. l. c..288, the Court of Appeals expressed the opinion that the defense had been conducted with a view to have the Story case overruled or limited. The court reaffirmed the Story case and deduced therefrom the following principles: "We hold that the Story case has definitely determined:

"First:  That an elevated railroad in the streets of a city, and operated by steam power, and constructed as to form, equipment and dimensions, like that described in the Story case, is a perversion of the use of the street from the purposes originally designed for it, and is a use which neither the city authorities nor the Legislature can legalize or sanction, without providing compensation for the injury inflicted upon the property of abutting owners.

"Second:  That the abutters upon a public street . . . acquire an easement in the bed of the street for ingress and egress to and from their premises, and also for the free and uninterrupted passage and circulation of light and air through and over such street, for the benefit of property situated thereon.

"Third:  That the ownership of such easement is an interest in real estate constituting property within the meaning of that term, as used in the Constitution of the State, and requires compensation to be made therefor, before it can lawfully be taken from its owner for a public use.

"Fourth: That the erection of an elevated railroad, the use of which is intended to be permanent, in a public street, and upon which cars are propelled by steam engines generating gas, steam and smoke, and distributing in the air cinders, dust, ashes and other noxious and deleterious substances, and interrupting the free passage of light and air from adjoining premises, constitutes a taking of the easement, and its appropriation by the railroad corporation, rendering it liable to the abutters for the damages occasioned by such taking."

In Sheehy v. Railroad, 94 Mo. 574, this court ex-

pressly approved the decision in Story v. Railroad, 90 N. Y. 122, saying that "a railroad company which had the right conferred on it to alter the grade of the street for the purpose of constructing its road, would also be liable to an abutting property owner for damages to his property by reason of such alteration.    In such case the privilege granted the railroad 'would be yoked with a liability.'    That the owner of property abutting in a street has such an easement therein as would support an action for damages peculiar to him is sustained by the following cases:    Lackland v. Railroad, 31 Mo. 180; *Story v. Railroad, 90 N. Y. 122.*"

In Doane v. Railroad, 165 Ill. 510, while denying a remedy by injunction on the ground that the city of Chicago was the owner of the fee in its streets and was empowered to permit the railroad company to build an elevated street railway therein, the decision throughout recognizes the right of an abutting owner to damages at law, and because he had a complete legal remedy for the damages resulting to him as an abutting owner, *relief in equity* was denied.

In Rude v. City of St. Louis, 93 Mo. l. c. 413, this court, after reviewing the prior cases in this court on this question, said:    "These cases recognize the right of a railroad company to lay down and use its tracks upon a street, when that right is conferred upon it by the municipality, the municipality having the power delegated to it to grant that right; *still the track must be laid upon the grade of the street and the railroad so used as not to unreasonably deprive the owner of the property of the use of the street.*"

From these cases we deduce the following propositions:

First:    The owner of property abutting on a public street or highway in this State has an easement in such street of air, light and access to and from his property by said street, whether the fee to the same is in the municipality or the abutting owners, and this easement is prop-

erty of which he can not be deprived without just compensation.

Second: That the construction and maintenance of a steam or street railroad on the grade of such street in pursuance of municipal authority, the municipal corporation having power to grant it, is not a new or additional servitude on the land upon which the street is constructed, but falls within the use contemplated when the street was laid out or acquired by the public. [Porter v. Railroad, 33 Mo. 137.]

Third: That the power of a city or other municipal corporation in Missouri to authorize the construction of railroads in the public streets is "*a modified right, a right hedged about with many qualifications;*" that it does not include the right to grant a railroad the exclusive use of the surface of a street *even when laid at grade.* [Lockwood v. Railroad, 122 Mo. 86; Sherlock v. Railroad, 142 Mo. 172; Knapp, Stout & Co. v. Railroad, 126 Mo. 26; Lumber Co. v. Railroad, 129 Mo. 455; Corby v. Railroad, 150 Mo. 457.] Neither can the municipal authority grant the power to a railroad company of such use of a street as will destroy or unreasonably interfere with the right of an abutting property holder of access to or egress from his property or deprive him of his easement of light and air from the street. The street on which a railroad is constructed on the grade can not be used for side tracks, the storing of cars, for water tanks or like structures. [Lackland v. Railroad, 31 Mo. 188; Tate v. Railroad, 64 Mo. 149; Spencer v. Railroad, 120 Mo. 154.]

Fourth: That the right to construct a railroad in a public street at grade by authority of municipal grant has been too long acquiesced in and too many rights have been vested on the faith of the decisions affirming such right to question such a right to acquire on the faith of such adjudication.

Fifth: That whether an elevated railroad, constructed on permanent pillars or arches in the street so

as shut out the light and air of abutting owners and interfere with the free use of the street and their access to and from their premises, is a new and additional servitude, and not in contemplation when the street was acquired or laid out, is an open question in this State and one which we are at liberty to decide on reason and the analogies of the law.

On the part of the plaintiffs we are not asked to reverse the unbroken line of decisions in this State which hold that a steam or street railroad constructed and maintained on the grade of a street by authority of municipal authority duly delegated is not a new and additional servitude; neither is it insisted that the municipal authority may not grant an elevated railroad the right to occupy a street subject to its liability to pay abutting owners damages for injuries to their easement as abutters on such street.

But they do contend that this court has not gone to the extent of holding that an elevated railroad, built on permanent structures in a public street which interfere with, and deprive the owners of, their easement and free access to and from buildings and deprive them of light and air, is not an additional servitude and one not contemplated when the street was established and laid out. They insist that the logic and reasoning of our decisions on the contrary lead to the conclusion that such structures as those described in their petition are inconsistent with the original dedication of the street and are such an injury to the abutting property owners as entitles them to damages therefor.

On the other hand, defendants assert that the construction of an elevated street or steam railroad on a street differs from one constructed on the grade of the street in degree *only,* and not in principle; that the principle upon which our decisions hold that a railroad built on the grade is not a new servitude, is not that they do not in fact inconvenience and damage the abutting owners, and depreciate their property, but is that

the city has the right to apply the street to any public service which will not destroy it as a highway or as a means of egress or ingress to and from the abutting property, and that all other resulting damages are only such as were contemplated in the original dedication of the highway whether by donation, purchase, or condemnation—that a long freight train passing on grade might make as much noise, emit as much smoke, and raise as much dust, as a train on an elevated road; and that an elevated road does not destroy the street as much as a surface road.

That the expression that "a city may authorize a steam railroad to be built *on the grade of a street*" is not a careless one, we think every decision of this court in which it is used will demonstrate. It is used advisedly, and in contradistinction to a road built on an embankment or in an excavation. As said by Judge BLACK, the right to build a steam railroad in a street is "hedged about with many qualifications," and one is, "*that if built otherwise than on the grade, it is an unwarranted interference with a highway dedicated to the use of the travelling public, and with the rights of property owners abutting thereon.*"

In the Story case (90 N. Y. 122), the distinction was made between a surface railroad and an elevated road on a public street. In the former, no part of the street was rendered impossible of passage with any vehicle or by any wayfarer or traveller; there was nothing exclusive in its use of the street. The rails being on grade did not obstruct the passage of any other vehicles along or across the tracks and the delay by the passage of trains was no greater than that occasioned by vehicles and carriages of private citizens to which of course every person using the streets must submit, whereas an elevated railroad built and constructed on a superstructure supported by heavy and permanent pillars of iron, stone or brick, constitutes a permanent perversion of the use of the street, in that the space it occupies with the pillars

is permanently diverted from use by the public, to which it was originally dedicated, to the exclusive use of the railroad, and deprives the public of that free and unobstructed use of the street "from end to end" and from "side to side" to which it is entitled, and seriously impairs the easement of free and uninterrupted passage and circulation of light and air to which the abutting owners are entitled.

The doctrine thus announced has been adhered to in all the subsequent cases in New York. [Lahr case, 104 N. Y. 288; Kane case, 125 N. Y. 164.]

In Fobes' case, 121 N. Y. 505, Judge PECKHAM reviewed the Story case, and pointed out that prior to the Story case that court had held, as we have held in Missouri, that a surface railroad was not a new servitude, and that as to surface railroads the Story case did not overrule or change the law in regard to railroads laid on the grade, but "embodied the application of what was regarded as well established principles of law *to a new combination of facts,* such facts amounting, as was determined, to an absolute and permanent obstruction in a portion of the public street, and in a total and exclusive use of such portion by the defendant, and such permanent obstruction and total and exclusive use, it was further held, *amounted* to a taking of some portion of plaintiff's easement in the street for the purpose of furnishing light, air and access to his adjoining lot. The structure, by the mere fact of its existence in the street, permanently and at every moment of the day took away from plaintiff some portion of the light and air which otherwise would have reached him and, in a degree very appreciable, interfered with and took from him his facility of access to his lot; such interference not being intermittent and caused by the temporary use of the street by the passage of the vehicles of the defendant while it was operating its road through the street, but caused by the iron posts and by the superstructure imposed thereon, and existing for every moment of the

day and night. Such a permanent, total, exclusive and absolute appropriation of a portion of a street as this structure amounted to was held illegal and wholly beyond any legitimate or lawful use of a public street.'' He says further on: ''In the Story case it was argued that no real distinction in principle existed between a steam surface and an elevated railroad resting on such a structure as was proved in that case. This court, however, made the distinction,'' and held ''that it was so real and tangible in fact as to call for a different judgment that would have been proper in the case of the ordinary steam *surface* railroad.'' What was then said was re-asserted in Sperb v. Railroad, 137 N. Y. 155, and in which it was added: ''The doctrine of the elevated railway cases has been of steady and consistent growth, since its rise in the decision of the Story case.'' The last-mentioned case was decided by a divided court, but all of that court has subsequently concurred in that doctrine.

When it is considered that the Court of Appeals of New York held and still holds, just as this court has always held, that a surface railroad is not a new servitude on the street, but distinguishes an elevated from a surface railroad, its opinions are entitled to great consideration on a question which originated in that State, because the city of New York was the first to authorize an elevated road on its public streets. Upon fundamental principles, the right of easement by the abutting property owners, the nature and purpose of a public street, the permanent and obvious nature of the injury to the abutting property by the construction of such a structure as plaintiffs describe in their petition, renders it a new and additional servitude. We think the distinction between the fitful, intermittent use of a street by a surface railroad and the permanent exclusive use of the same by an elevated railroad, shutting out the air and light and interfering with that free access which every abutting owner has to and from the street, is too

plain to be obscured or disregarded, and that it is *pro tanto* a taking of plaintiffs' easement within the meaning of our Constitution and laws, and entitles them to compensation therefor.

It is true that some very able courts and law-writers, notably the Supreme Court of Minnesota in Lam v. Railroad, 45 Minn. 78, and Wood on Railroads, vol. 1, p. 778, find difficulty in reconciling the doctrine of the Story case with the former decisions of the New York court as to surface railroads, but it seems to us that the essential difference is that urged by Judge Danforth, to-wit, *"the change of grade by permanent structures* which result in the injury to, or destruction of the abutting owner's easement."  Were it a new question we would be greatly inclined to say that a steam railroad emitting steam, smoke, and cinders in front of an abutter's property, was a servitude never contemplated in the establishment of the street, but the rule to the contrary, as already said, has been too long maintained, and too many rights have been vested on the faith of it, for the courts now to disturb it, but there is no sound argument or reason, in our opinion, for extending it one whit further than we have heretofore gone.

Our conclusion is that the plaintiffs state a good cause of action and one entitling them to damages, irrespective of sections 6116 and 6117, Revised Statutes 1899, which in our opinion did not change the law as to railroads constructed *on the grade or surface of the street,* as was ruled in Ruckert v. Railroad, 163 Mo. 260, and Nagel v. Railroad, 167 Mo. 89.

II.  But conceding that plaintiffs had a cause of action, the question arises on the face of the petition whether that action is not barred by our statute of limitations.

The defendant's structure is of a permanent character and the injury to plaintiffs' property was susceptible of ascertainment when the said superstructure and railroad was completed in 1890 as alleged in the petition.

In Howard Co. v. Railroad, 130 Mo. 652, this court said: "While there is some conflict between the American cases on this subject, the rule sustained by the great weight of authority seems to be that when by wrongful acts a permanent nuisance is created and the injury therefrom is direct, immediate, and complete so that the damages can be immediately measured in a single action, the statute will begin to run from the erection of the nuisance. On the other hand, when the injury, as in this case, is not complete, so that the damages can be measured at the time of the creation of the nuisance in one action but depends upon its continuance and the certain operation of the seasons or of the forces set in motion by it, the statute will not begin to run until actual damage has resulted therefrom." Citing cases, among others, James v. Kansas City, 83 Mo. 567.

In James v. Kansas City, 83 Mo. 567, it was said: "Where the damage is complete by the original act of trespass, the statute begins to run from that time." In this case the structure was permanent and complete in 1890. The theory of the plaintiffs is that they were entitled to damages for the construction of such permanent structure, and that theory is correct, and hence they were required to bring their action within five years after its completion.

Their damages could have been estimated in one action, at that time, and the five-years limitation must and does control. [R. S. 1899, sec. 4273, 4th clause; Smith v. Sedalia, 152 Mo. 283.]

It followed that the plaintiffs were barred when they commenced their action and on this ground alone the judgment of the circuit court must be and is

affirmed. *Robinson, C. J., Burgess* and *Fox, JJ.,* concur *in toto; Marshall, J.,* concurs in separate memorandum; *Valliant, J.,* dissents as to first paragraph of the opinion, but concurs in second paragraph.

MARSHALL, J.—I concur in the result, and am of opinion that all steam railroads on a public street are an additional servitude, and when constructed on the grade, necessarily destroy the street for ordinary street purposes, but the elevated roads are not as injurious to abutting property as grade roads, as is shown by the grade road on Poplar street and the elevated road on Front street, in St. Louis. I am further of opinion that if the matter as to surface steam roads was not settled by the doctrine of *stare decisis,* they ought not to be allowed on the streets of a city.

### DISSENTING OPINION.

VALLIANT, J.—This court has in numerous decisions, beginning in 1862 with Porter v. Railroad, 33 Mo. 128, and ending in 1902 with Nagel v. Railroad, 167 Mo. 89, said that it was lawful for a city to authorize the construction and operation of a railroad in a street, and that such a use of the street was not a new servitude. Under these decisions, street railroads and steam railroads have been constructed and operated in the streets of all the cities in this State, and in many instances the value of property abutting the streets so used has been destroyed or greatly impaired; yet the court has said that the owner of the property has no remedy.

An elevated railroad in a street may, in point of fact, according to the particular circumstances, be more or less destructive of the value of the property than a surface road, but in point of law there is no difference between the right to subject the street to the servitude of a railroad on the surface and to that of a railroad on an elevated structure. If the one is not a new servi-

tude, the other is not; the principle is the same in both cases. If the court is now of the opinion that its former decisions were wrong, it would be better now, at this late date, to say so. But as long as we uphold our former decisions, we can not, in my opinion, with consistency, say that an elevated railroad is a new servitude.

For this reason I am unable to concur in the first paragraph of the opinion in this case.