## THE STATE ex rel. TITUS et al. v. WABASH RAILROAD COMPANY, Appellant.

### Division One, July 13, 1907.

1. **MANDAMUS: Parties.** Citizens and taxpayers of a city are proper parties to bring and maintain mandamus, in the name of the State, to compel a railroad company to restore a public street which it has appropriated to its own use.

2. **PUBLIC STREET: Railroad: Condition in Statute.** The condition contained in the statute authorizing a railroad company to construct its track in a public street or highway, that "the company shall restore the street or highway to its former state or to such state as not unnecessarily to impair its usefulness," is not a condition subsequent, but is a condition that runs with the grant. The statute means that if the character of the street is such that the company's tracks cannot be laid therein without hindering and preventing the public from using it as a highway, then, no matter how important to the company the laying of its track therein may be, it cannot be done.

3. ————: ————: **City's Permission.** It is not competent for a city to authorize a railroad company to so use a street as to destroy it as a thoroughfare for public use.

4. ————: ————: **Trespasser: Subsequent Consent.** The laying of a railway track in a public street or the operation of a railroad therein without the city's consent, made the company a trespasser. But after it obtained such consent its occupancy of the street became lawful, provided it thereafter restored the street to its former state as a public highway, but if it did not do that it may by mandamus be compelled to do so.

5. ————: ————: **Knowledge.** A railroad company which buys a railway track already constructed in a public street is bound to know that the city could not grant its predecessor the exclusive use of the street.

Appeal from Clay Circuit Court.—*Hon. J. W. Alex-ander*, Judge.

AFFIRMED.

*J. L. Minnis* and *D. C. Allen* for appellant.

(1) It is a well-settled rule that the principles of interpretation, and the rules of construction, are the same, whether the instrument be a constitution, a statute, a deed, a grant, a covenant or a contract. Story on the Const. (5 Ed.), secs. 451, 401; Potter's Dwarris, pp. 47, 175, 182; End. Interp. Stats., secs. 1, 2, 8, 258, 295. In view of the authorities above cited, and all authorities on the interpretation of statutes, it is evident that the relators are altogether too narrow in their construction of section 2543, Revised Statutes 1889, and that they have excluded what must have been the intention of the legislators. The legislators could not have contemplated that their grant of power to the Excelsior Springs Railroad Co. to construct its road over and along the avenues, streets and highways of a city or town, should be a grant made in vain; but it must be assumed that the exercise of power granted the Excelsior Springs Railroad Co. drew after it all necessary consequences, and such consequences the law contemplated and sanctions. (2) Under the facts in this case, it is manifest that after the railroad track was laid on Dunbar avenue, that avenue could not have been, nor can it be now, restored to its former state, nor to such state as not unnecessarily to impair its usefulness, and under the authorities, such a consequence must have been within the intent and meaning of the statute. The necessity of the case drew with it all necessary consequences. It was necessary to impair the usefulness, — for the public good, — of Dunbar avenue, and it was not impaired unnecessarily. The clause has a grant and a condition.

There could be no such thing as restoration until after construction. The condition, therefore, annexed to the grant, is a condition subsequent. It is, therefore, a void condition, because it is impossible. By all of the authorities, an impossible, subsequent condition is void, and the right passes, uncontrolled, under the grant. 2 Black. Com., 156; 2 Kent's Com., p. 146; Peyton v. Bury, 2 P. Wms. 626; Graydon v. Hicks, 2 Atk. 16; Cary v. Bertie, 2 Vernon 333, 2 Wash. Real Prop. (5 Ed.), sec. 6; 1 Shep. Touchstone (7 Ed), p. 133; End. Interp. Stats., sec. 441; Potter's Dwarris, p. 75; 1 Preston on Estates, p. 476. But the whole principle that impossible conditions are void in law is derived from the jurisprudence of the Romans. Its equity and justice have, therefore, appealed to, and been sustained by, all the legal thinkers of Europe and America. For instance: Gaius says: "An impossible condition, that the promisee, for instance, should touch the sky, makes the stipulation void, although a devise with an impossible condition, according to the authorities of my school, has the same effect as if the condition were not annexed. So, a stipulation to convey the promisee's property to the promisee, is null and void, for the conveyance is impossible." Poste's Gaius, book 3, secs. 98, 99, p. 380. Says Justinian: "An impossible condition in the institution of heirs, gift of legacies, creation of *fidei commissa,* and gifts of freedom, is considered not inserted at all." Sandars' Justinian, sec. 10, p. 269; and sec. 11, p. 427. The conclusion, therefore, is irresistible, that the condition of restoration annexed to the grant of right of way, in section 2543, Revised Statutes 1889, being impossible, in this case, is void.

*Harris L. Moore* and *Sandusky & Sandusky* for respondents.

(1) Under section 2543, Revised Statutes 1889, it was the duty of appellant to restore Dunbar avenue

"to its former state, or to such state as not unnecessarily to have impaired its usefulness." R. S. 1889, sec. 2543. (2) The practice and law governing this class of cases is stated fully and clearly in State ex rel. v. Railroad, 86 Mo. 13; Dubach v. Railroad, 89 Mo. 483; State ex rel. v. Public Schools, 134 Mo. 304; State ex rel. v. School Board, 131 Mo. 514. (3) Relators were citizens and taxpayers of Excelsior Springs enforcing a public duty. State ex rel. v. Railroad, supra. (4) The judgment merely enjoins upon appellant its statutory duty. (5) "If the character of a street should be such that defendant's track could not be laid upon the street without hindering the public from using it, then no matter how important to the company that its track should be laid in that street, it could not be done, — nor is it competent for a city to authorize such use of a street dedicated as a street as will destroy it as a thoroughfare for the public use." Dubach v. Railroad, 89 Mo. 488; State ex rel. v. Murphy, 134 Mo. 562; Brown v. Railroad, 137 Mo. 536; Corby v. Railroad, 150 Mo. 465.

GRAVES, J.—Relators are citizens and tax-payers of the city of Excelsior Springs, a city of the fourth class in Clay county, Missouri. The action is one of mandamus, instituted May 8, 1903, to compel defendant, the owner and operator of a line of railroad in and upon Dunbar avenue, a public street of said city, "to restore said Dunbar avenue to as good condition as it was before its tracks were laid thereon, or to such condition as not to unnecessarily impair its usefulness and for such other orders and judgments in the premises as may be just." The basis of the action is section 1035, Revised Statutes 1899. The part peculiarily applicable to a railroad corporation which constructs and maintains its road in a public street, is as follows:

"Fourth, to construct its road across, along or upon any streams of water, watercourse, street, highway, plank road, turnpike or canal which the route of its road shall intersect or touch, but the company shall restore the stream, watercourse, street, highway, plank road and turnpike thus intersected or touched to its former state, or to such state as not unnecessarily to have impaired its usefulness."

Excelsior Springs was incorporated as a city of the fourth class in 1881, and at the institution of the present action had a population of twenty-five hundred inhabitants. Under the evidence it is purely a health and pleasure resort, and is visited by people from all sections of the country. Forest Park, an addition to said city, was platted in 1887, and St. Paul, an addition which lies north of Forest Park, was platted in 1889. Both additions were laid out and platted by the Excelsior Springs Company, a corporation. The streets, avenues and alleys were dedicated to the public. Dunbar avenue runs through these additions or a portion thereof. The dedication of the streets, avenues and alleys in Forest Park contained a reservation, in this language: "All streets, avenues and alleys as represented on the above plat are hereby dedicated to public use forever, saving and except, however, the exclusive right of way for street railways, which right of way is hereby expressly reserved by and to the undersigned proprietor, its successors, and assigns."

The course of Dunbar avenue is from south to north, but by irregular meanderings and curves. Its southern end is a street called Concourse and its northern termination is at Kimball avenue.

Dunbar avenue was graded and made a roadway by the Excelsior Springs Company prior to the platting of the additions. The city paid no part of the cost thereof. In 1886, the Chicago, Milwaukee & St.

Paul railway was built to Excelsior Springs and its depot located about a mile from the city proper, the direction being west of north. This roadway, now Dunbar avenue, was constructed as a road to said depot. It followed the meanderings of the hill and was and is a very steep grade. The portion thus graded was twenty-five to thirty feet wide, but when platted as Dunbar avenue, it was given the uniform width of sixty feet. Prior to 1891, a corporation known as "The Excelsior Springs Railroad Co." was chartered to construct a standard gauge railroad from a point on the Wabash railroad three miles east of Missouri City, to Excelsior Springs, and through said city to a junction with the Chicago, Milwaukee & St. Paul railroad. This company first built its line south to the Wabash railroad and established its depot near the south end of Dunbar avenue. In 1891, it built, from its depot in Excelsior Springs, its road over and through Dunbar avenue and other streets and avenues, a distance of a mile, to the Chicago, Milwaukee & St. Paul depot. In doing so the ties were placed in the ground and the rails spiked thereto. Spaces between the ties were filled in with dirt, rock and gravel, so that to this extent the railroad is above the grade of the street. Owing to the steep grade and contour of the street, the railroad of necessity curved and ran from one side of the street to the other. The road for this mile is of standard gauge, but owing to the extreme grade and curvature of the line cannot be operated with standard engines and cars, but is operated with what is called a dummy engine and short, light passenger coaches, the engine pushing the cars up from the Wabash depot to the Milwaukee depot and pulling them back to the Wabash depot, so as to always have the engine on the south end of the train. By ordinance passed by the board of aldermen of said city, December 13, 1894, the route of the Excelsior Springs railroad

was established as it now is and as it had been previously constructed, some three years before, and by said ordinance the Excelsior Springs Railroad Company was given the right "to lay out, locate, construct, maintain and operate a standard gauge railroad upon, along, over and across the following streets and avenues of the city of Excelsior Springs, to-wit." The streets named are the same ones used by the railroad now and used by it when constructed in 1891, three years prior to the ordinance. This ordinance was evidently passed to meet the requirements of section 1035, Revised Statutes 1899, then section 2543, Revised Statutes 1889. The section required the assent of the city before the construction of the road, but none appears to have been given until the passage of this ordinance.

The defendant in this case became the owner of the property of the Excelsior Springs Railroad Company, sometime between 1896 and 1901, not clear to us from the record, and has greatly improved the conditions both as to the roadbed and the accommodations, but has in no wise changed the grade of the roadbed in Dunbar avenue. From the evidence it appears that a great many passengers and quite a quantity of freight are annually hauled over this mile of track between the two depots. It also appears that with the exception of a few property-owners in Forest Park, who wanted damages, there was no objection to the construction of this railroad in 1891, and that this defendant knew of no objections at the time of its purchase and learned of none until about the time of the institution of this suit, although it was improving the property and had expended on the whole line (ten miles) some thirty thousand dollars. Since the construction of this mile of railroad, in the course of which a bridge was necessary at one place, it is conclusively shown, Dunbar avenue has been in a condition wholly

206 Sup.—17

unfit for travel. In fact, the return of defendant practically admits this condition of affairs. On the other hand it appears that it would be impracticable to so construct the roadbed of the railroad as to preserve the street for use, and that this route is the most practicable route between the two depots, both for the city and the railroad company. When asked if the ties could not be sunk below the level of the street surface, and thus preserve the street, witnesses for defendant said that owing to the grade and curvature of the road, and the washing of dirt and drifting of snow, this would be impracticable and dangerous.

Judgment was for relators in this language: "Whereupon, it is by the court considered and adjudged that a writ of peremptory mandamus be issued to said respondent, directing said Wabash Railroad Company to restore Dunbar avenue mentioned in the petition herein, to as good condition as it was before its tracks were laid thereon, or to such condition as not to unnecessarily impair its usefulness; and that said relators recover of respondent their costs and charges in this behalf expended and have thereof execution."

Being unsuccessful in its motion for new trial, defendant duly perfected its appeal to this court.

I. Relators are citizens and taxpayers of the city of Excelsior Springs, so alleged to be in the petition for the writ of mandamus and as shown by the evidence. The alleged failure of the defendant is a failure to perform a duty which it owed to the public. Whatever may be the rule elsewhere, it is well established in this State that they are proper parties to bring and maintain this action. [State ex rel. v. School Board, 131 Mo. 1. c. 514; State ex rel. v. Railroad, 86 Mo. 13; State ex rel. v. Francis, 95 Mo. 44.] This proposition, however, does not seem to be seriously disputed by defendant.

II.  This is an extremely harsh case in which to call for a construction of that clause of section 1035, Revised Statutes 1899, herein above quoted in our statement.  No assent was given by the city for the construction of the railroad until some three years after its construction; its construction seems to have been the result of a popular demand, with a little opposition by some few property-owners along the thoroughfare, which was to be practically confiscated; the city is in no sense a commercial or manufacturing city, but solely a pleasure and health resort; to have taken any other route would have seriously marred the peculiar beauty of the city's surrounding natural scenery; the road as constructed and operated accommodates thousands of the temporary inhabitants of the city, in the way of giving them prompt and ready ingress and egress to two main trunk lines of railway; freight from one line is brought down an exceedingly steep grade to a point within easy access of the main portion of the city; more than nine years after the ordinance of 1894, containing the assent of the city and practically ratifying the construction of the railroad, the city for the first time, by resolution, demands the restoration of Dunbar avenue, and during this time, the defendant, without knowledge of any discontent and objection, either upon the part of the city or the citizens, purchases the property and has expended much money thereon.  The city is not a party to the action, but by its resolution of March 26, 1903, in which it demands the restoration of the street, is seemingly acting in concert with the relators, none of whom acquired property rights in the western part of the city prior to 1895, and most of whom acquired such rights after January 1, 1903.

Further, upon the one hand, Dunbar avenue, as a public street, is practically destroyed, and upon the other it is impracticable to maintain the railroad and

at the same time restore the street to its former condition, or a condition for public use. So that, we repeat, we have here an extremely harsh case for the construction of the section of statute before us, upon which construction must depend the result of this case.

Defendant contends that, inasmuch as the State by this section has granted railroad corporations the right to construct their roads upon and over streets and highways, the subsequent part of the clause quoted, requiring them to restore the street or highway, is a condition subsequent, and if that condition is impossible, then it is void. Learned counsel in discussing this clause, put their contention in this language: "The clause copied has a grant and a condition. There could be no such thing as restoration until after construction. The condition, therefore, annexed to the grant, is a condition subsequent. It is therefore, a void condition, because it is impossible. By all of the authorities, an impossible, subsequent condition is void, and the right passes, uncontrolled, under the grant."

They then insist upon a liberal construction of the statute. If it were a question of first expression in this State, as counsel seem to insist, then a closer scrutiny of the law might be required. But our court has heretofore considered this question, and whilst the cases wherein it was considered do not possess the harshness of the case at bar, we can see no reason from departing from our former rulings, and thereby overruling a line of cases, and we accordingly adhere to the doctrine of these cases, which cases are as follows: State ex rel. v. Railroad, 86 Mo. 13; Dubach v. Railroad, 89 Mo. 483; Brown v. Railroad, 137 Mo. 529; State ex rel. v. Murphy, 134 Mo. l. c. 562; Knapp, Stout & Co. v. Railroad, 126 Mo. l. c. 37; Corby v. Railroad, 150 Mo. 457, and cases therein cited and reviewed.

In the Dubach case, supra, this court, through HENRY, C. J., said: "It is true that it is settled law

in this State that laying a railroad track in a street may be authorized by the Legislature. [Porter v. Railroad, 33 Mo. 128; Tate v. Railroad, 64 Mo. 158.] But it must be done in the manner authorized. And the authority by which the defendant undertook to change the location of its side track required it 'to be so constructed as not to hinder or prevent the public from using the street.' If the character of a street should be such that defendant's track could not be laid upon the street without hindering the public from using it, then no matter how important to the company that its track should be laid in that street, it could not be done. Nor is it competent for a city to authorize such use of a street dedicated as a street as will destroy it as a thoroughfare for the public use. [Belcher Sugar Refining Co. v. St. Louis Grain Elevator Co., 82 Mo. 124.]''

In discussing the section now under consideration in the Brown case, supra, we said: ''But the statute gives railroad corporations the right to construct and maintain their roads across and along the public streets of cities, the assent of the municipal authorities being first obtained (R. S. 1889, sec. 2543), and cities of the second class, to which St. Joseph belongs, are authorized to direct and control the construction of railroads in their streets and alleys, and to require them to be so constructed and laid as to interfere as little as possible with ordinary travel and use. [R. S. 1889, sec. 1255, sub-div. 26.] The exercise of the rights and powers thus conferred has received the approval of this court in many cases. [Knapp, Stout & Co. v. Railroad, 126 Mo. 35; Lockwood v. Railroad, 122 Mo. 88, and cases cited in each.] It is true the power of municipal authorities to grant to a railroad company the right to lay its tracks along the street of the city is not absolute. They cannot do so if the operation of the railroad will destroy the use of the street as a pub-

lic thoroughfare.    [Knapp, Stout & Co. v. Railroad, supra; Lockwood v. Railroad, supra; Dubach v. Railroad, 89 Mo. 483.]''

In the Murphy case, supra, we said: ''The power to regulate the use of streets refers to legitimate public uses not inconsistent with the ordinary and paramount use for travel thereon, or with the private rights of abutting property-owners.    An ordinance having the effect of diverting the streets from a public to a private use, or of unreasonably appropriating them to a public use other than that of ordinary travel by pedestrians and vehicles, is *ultra vires* and void.''

Further, in the Knapp, Stout & Co. case, supra, after a review of the authorities, we said: ''Taking these cases all in all, it is very clear a municipal corporation has no power to grant to a railroad company such use of a street as will destroy its usefulness as a public thoroughfare, or destroy or unreasonably interfere with the right of an abutting property-holder, to access to and from his property.    Though the city gave its assent to the construction of this railroad track, still the defendant was bound to construct and use the track with due regard to the rights of the public and adjacent property-owners.    The defendant has no greater rights than others, for in the use of the street it is but one of the public, and must conduct and operate its track accordingly.''

We spoke thus, in the Corby case, 150 Mo. l. c. 469: ''The sum of it all is that the public cannot grant to any one exclusive rights in a public highway, nor can it authorize any one to use the whole or any part thereof in such a manner as to unreasonably interfere with its use by the other members of the public or with the right of access of the abutting owners to their property.''

So that we conclude that whilst the law permits a railroad to enter upon a public highway, it is a con-

ditional grant, i. e., the company, ''shall restore . . . highway . . . to its former state, or to such state as not unnecessarily to have impaired its usefulness,'' and if the highway is such as will not enable the company to substantially perform the condition imposed, it can not enter; and the municipal authority can not grant authority for it to so enter and remain.

III. Prior to the ordinance of 1894, the railway company then operating the railroad in Dunbar avenue, was a trespasser and no more. No assent of the city had been obtained. After this ordinance it changed from a mere trespasser to a lawful occupant, provided it met the conditions prescribed by the law as found in section 1035, supra. This the original company never did, nor has its successor, the defendant, in this action. Defendant purchased with a knowledge of the requirements of the law, and with a knowledge of the then apparent conditions of the street. What money it has expended has been under these circumstances. It was bound, in law, to know that the city could not have granted its predecessor the exclusive use of this street. Nor do we think there are any serious elements of estoppel in the case. In fact, counsel have not urged the question. Upon reconsideration the defendant may find that it can comply with the judgment of the trial court, and so reconstruct its road and Dunbar avenue as to permit the use thereof, both by the public and itself. But, however this may be, the judgment is right, and it is therefore affirmed.

All concur.