## NELLIE E. WRIGHT, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

### Kansas City Court of Appeals, November 3, 1913.

1. **DAMAGES: Railroads: House Tracks: Obstructions in Public Streets: Abutting Property Owner.** The plaintiff sued to recover damages for the erection and maintenance of a house track by the defendant on a public street adjoining her property. The municipality, by ordinance, allowed such use of the street but required the railroad company to pave it. *Held*, that plaintiff was entitled to recover, first, for the impairment of the means of ingress and egress; second, for the injury to the comfortable use and enjoyment of the premises; and third, for the destruction of her right to use the street as a temporary place of deposit for fuel and other bulky materials for use and consumption on her premises.

2. ————: ————: **Grants in Public Streets: Statutes.** A railroad company has the right to lay down and use its tracks upon a street when that right is conferred upon it by the municipality, the municipality having the power delegated to it to grant that right. But the power of the municipal authorities to grant to a railroad company the right to lay its tracks along a street is not absolute. They cannot do so if the operation of the railroad will destroy the use of the street as a public thoroughfare.

3. ————: ————: **Unlawful and Unreasonable Obstruction.** Where the railroad track constitutes an unreasonable or unlawful obstruction in the street, the abutting property owner may recover, from the person causing such obstruction, damages for the injury he sustains where such damages are particular, direct and special.

4. **INSTRUCTIONS: Damages: Temporary Nuisance.** An instruction which authorized the jury to allow damages that were not special to plaintiff but were common, and which permitted plaintiff to recover for depreciation in the market

value of her property caused by the nuisance as though the
nuisance and its injurious consequences to plaintiff were per-
manent is erroneous, because the nuisance, created by the lay-
ing and maintaining of a railroad track in a public street
without lawful right or authority, being subject to abatement
by legal process, must be regarded as temporary.

Appeal from Livingston Circuit Court.—*Hon. Arch
B. Davis*, Judge.

REVERSED AND REMANDED.

*J. M. Davis & Son, J. L. Minnis* and *Jones & Conk-
ling* for appellant.

*Scott J. Miller* for respondent.

JOHNSON, J.—This suit is for damages plaintiff
alleges she sustained from the erection and mainte-
nance of an obstruction in the public street in front
of property owned and occupied by her in the city of
Chillicothe. The answer is a general denial and an
allegation that the occupation and use of the street by
defendant is lawful. The cause is before us on the
appeal of defendant from a judgment recovered by
plaintiff in the circuit court.

Plaintiff owned and occupied as her residence a
house and lot fronting on First street in Chillicothe
between Slack and Vine streets. First street runs east
and west and is bounded on the south by defendant's
railway tracks. Slack and Vine streets run north but
not south from First street and do not cross the tracks.
Defendant's station is a short distance southwest of
Vine street and is on the north side of the main track.
There was a house track on the north side of the station
which, going westward, left the main track at a point
seven feet west of an imaginary prolongation of the
west line of plaintiff's property. Defendant's bus-
iness at Chillicothe required a longer house track and
in June, 1910, defendant applied to the city council

for permission to extend that track eastward along
First street to a point about one hundred feet east
of Slack street.   There is evidence tending to show
that an ordinance granting such permission was passed
June 20, 1910, but no record was made of such ordi-
nance, if, in fact, one was enacted.   The city records
do show that an ordinance was duly passed November
21, 1910, granting defendant permission ''to construct
and maintain a railroad track on First street between
Vine and Slack streets, which said track is to run par-
allel with the main track of said company provided
said company pave First street from the center line of
Slack street, which paving is to be in accordance with
plans and specifications furnished and approved by the
city engineer.''   The track thus authorized had been
laid by defendant in the preceding month.   First street
was not paved until about eight months after the track
had been laid and put into service, but the delay ap-
pears to have been caused by the failure of the city
engineer to furnish plans and specifications for the
pavement and the work was done in a reasonable time
after the delivery of the plans and specifications to
defendant.   The street had not been paved before and
being on low ground was muddy and almost impassable
in very wet weather.   The substantial brick pavement
laid by defendant would have enhanced the value of the
street to the abutting property owners but for the en-
croachment of the extension of the house track.   The
evidence of plaintiff tends to show that the north rail
of the track was laid about twelve feet from the curb
line in front of plaintiff's property and that the dis-
tance narrowed going east from this point to about
ten feet at the intersection of Slack street.   There was
a sidewalk space of six feet and eight inches between
the curb and property lines but the pavement ended
at the curb and, therefore, was only ten feet wide at its
narrowest end.   Vehicles could not pass each other or
be turned around in this space, nor could they be

backed up to load or unload. There was no paving be-
tween the rails or south of the house track. Vehi-
cles could not be driven along or across the part of
the street occupied by the track and the whole of the
street except the narrow pavement we have described
was appropriated by defendant to its exclusive use.
Moreover the house track was used almost constantly
as a storage track for cars being loaded and unloaded.
The presence of such cars in the street and the fre-
quent presence on the pavement of wagons, engaged
in the process of loading and unloading, greatly im-
paired the use of the street as a means of ingress and
egress to and from the abutting property and entirely
destroyed its use by the property owners as a tem-
porary depository for fuel, building material, or other
bulky materials.

The evidence of defendant describes the pavement
as being several feet wider and as affording room
for vehicles to pass each other and to turn around,
but the evidence of plaintiff relating to the width of
the pavement and the conditions produced by the con-
struction of the new track is substantial and will be
accepted as conclusive in the consideration of the ques-
tions of law raised by the demurrer to the evidence
which counsel for defendant argue should have been
given.

Point is made by plaintiff that inasmuch as the
proof discloses the track was laid before the passage
of a formal ordinance by the city council, the belated
ordinance cannot be regarded otherwise than as wholly
abortive, but we do not find it necessary to discuss
that question and without expressing our opinion up-
on it we shall begin our consideration of the case by
assuming, *arguendo,* that so far as the city govern-
ment could confer authority on defendant to use the
street for its house track such authority was granted

by ordinance duly enacted before the work was commenced.

The first question to engage our attention is that of the nature and scope of the power the city government had to grant authority to a railroad company to construct and operate a railroad track along a public street. The Supreme Court in a long line of decisions have recognized "the right of a railroad company to lay down and use its tracks upon a street when that right is conferred upon it by the municipality, the municipality having the power delegated to it to grant that right." [Rude v. City, 93 Mo. 408; Lackland v. Railroad, 31 Mo. 180; Swenson v. City, 69 Mo. 157; Cross v. Railroad, 77 Mo. 318; Gaus v. Railway, 113 Mo. 308; Brown v. Railroad, 137 Mo. 529.]

In the case last cited attention is called to the statute (Sec. 2453, Rev. Stat. 1889, Sec. 3049, Rev. Stat. 1909) which gives to railroad corporations the right to construct and maintain their roads across and along the public streets of cities, the assent of the city first being obtained and it is observed that "the exercise of the rights and powers thus conferred has received the approval of this court in many cases." But further the rule is recognized in that case that the power of municipal authorities to grant to a railroad company the right to lay its tracks along the streets is not absolute. "They cannot do so if the operation of the railroad will destroy the use of the street as a public thoroughfare."

The reason that has prompted legislative and judicial acknowledgment of the right under consideration is that since a railroad is in the nature of a public agency for the transportation of persons and property "its vehicles have the same right to use the public highways as the wagon of the farmer or the carriage of the banker. Public highways are for the use of all kinds of travelers and carriers and the law does not discriminate between the different classes of

which the general public is composed. Consequently the power of the Legislature to legislate on the subject of granting the right to railroad companies to lay their tracks in public streets is unquestioned and such right may be exercised in the manner prescribed by statute provided it be reasonably exercised. A railroad company has no right to appropriate a street to its exclusive use, to unnecessarily impair the rights of other users, nor to restrict unnecessarily the rights of abutting property owners to free ingress and egress and to such other uses of the street as are incidents to the ownership of abutting property. [State ex rel. v. Railroad, 206 Mo. 251.] The attempted grant in the present instance must be condemned as unlawful for two reasons. First it gave to defendant the right to appropriate to its own use and to the complete exclusion of all other users two-thirds of a public street under the guise of an apparently innocent grant of the right to lay a single switch track on grade and in consideration of the paving by defendant of the whole street for the benefit of the public. The narrow pavement accepted by the city as a performance of the duty imposed on defendant by the grant was a poor excuse for such manifest spoliation of the rights of the general public and of the abutting property owners. Indeed, the whole construction and the uses made of it by defendant amounted practically to a seizure of the whole street for its own uses to the exclusion therefrom of all other classes of users. In the fable the Arab's camel begged permission to put his head in the tent and obtaining it crowded in his whole body, forcing the Arab out, so in this instance, defendant asked to be allowed to use the street as one of many travelers and abused the grant of such right by taking the whole street. The second reason for condemning the grant is that the track authorized was intended to be used and continuously has been used as a house track and not as a track for the moving of trains or cars.

In Lackland v. Railroad, 31 Mo. l. c. 188, the Supreme Court, speaking of the legislative power to authorize the use of public highways by railroad companies, said "we have not observed any case even where this power is conceded which allows the erection of depots, or car buildings or any other structures, which materially obstruct the use of the street or highway as a public easement."

In Tate v. Railway, 64 Mo. l. c. 158, it is said: "It is further determined, that where the charter of the municipality so allows, a railroad may be constructed on a street by permission of the municipal authorities, and neither the municipal corporation nor the railroad company will be responsible for the inconvenience and damage resulting from such construction. [Porter v. N. M. R. R. Co., 33 Mo. 128.]    But these principles apply only to a railroad constructed on the grade of the street, where the only obstruction is the passage of trains, and not where embankments have been made above the grade, or where the street is used for sidetracks or other structures for the convenience of the road.  For those purposes the railroad company must procure sufficient ground, not altogether dedicated to uses entirely inconsistent with the purposes they propose to apply it."

In Donner v. Railway, 133 Mo. App. l. c. 535, we held that a municipality could not lawfully grant the power to a railroad company to so use a street as to destroy or unreasonably interfere with the right of an abutting property owner of access to or egress from his property and further held that "the street on which a railroad is constructed on grade cannot be used for sidetracks, the storing of cars, for water tanks or like structures."

In speaking of sidetracks we had in mind not passing or spur tracks used merely in the movement of trains and cars but of storage and house tracks where

freight cars are left standing. A house track whereon cars are loaded and unloaded by the patrons of the company is but an adjunct of the freight depot, a part of the company's establishment for the transaction of business with the community, an open warehouse and loading place and the maintenance of such a track in a public street cannot be regarded as a use of the street for the purposes of travel.

In Foundry v. Railroad, 130 Mo. App. 1. c. 117, the St. Louis Court of Appeals, in a *dictum*, appear to overlook the distinction the Supreme Court cases recognize between passing or switching tracks on the one hand and storage or house tracks on the other, and conclude that the earlier cases, e. g., Tate v. Railroad, supra, holding that the latter class of tracks cannot be properly maintained in public streets, were overruled, in effect, in the later case of Brown v. Railroad, 137 Mo. 529. But this is not the case. The switch track under consideration in the Brown case was a spur track running along an alley, used only for the movement of cars and not as a storage or house track. The opinion states "that at the terminal of the switch provision is made for standing freight cars on *private property,* where they can be loaded and unloaded if anyone desires to use them." Since the track was used only as an instrumentality of transportation, a means by which vehicles might be moved, its presence in a public way was as legitimate as a street car track would have been. [Donner v. Railway, supra.] There is no conflict between the Brown and Tate cases.

These considerations compel the conclusion that the attempted grant by the city of authority to lay and maintain a house track in the street was void for the reasons that the grant contemplated an unreasonable appropriation of the street and, further, contemplated the use of the street for an improper purpose. The track must be regarded as a purpresture—a public

nuisance—and we pass to the consideration of the question of the right of plaintiff, an abutting property owner, to maintain an action for the recovery of the damages sustained by her in consequence of the nuisance. That the property of plaintiff has been damaged is unquestioned and unquestionable. The injury causing the damages may be separated into three elements, viz., first the impairment of the means of ingress and egress; second, injury to the comfortable use and enjoyment of the premises, and, third, the destruction of the right of plaintiff to use the street occasionally as a temporary depository of fuel and other bulky materials for consumption on the premises.

When a railroad track is laid and operated in a public street in a proper and reasonable manner under a lawful grant from the municipality, the inconveniences and annoyances to others caused by the operation of trains and cars along the street are *damnum absque injuria* for the reason that travelers and the occupants of abutting property have equal rights to the use of public ways and each must endure the inconveniences caused by the lawful exercise of the rights of others, but where the railroad track constitutes an unreasonable or unlawful obstruction in the street, as in the present instance, the rule is that the abutting property owner may recover, from the person causing such obstruction, damages for the private injury he sustains where such damages are particular, direct and substantial. [3 Dillon on Municipal Corporations (5 Ed.), sec. 1168; Rude v. City, 93 Mo. 414; Gaus v. Railroad, 113 Mo. 308; Stephenson v. Railroad, 68 Mo. App. 642; Spencer v. Railway, 120 Mo. 154.]

The right of an abutting owner to reasonable means of ingress and egress is a private right, that is to say, it is regarded as a right incidental to his proprietorship and, therefore, is different and distinct from any right enjoyed by other uses of the public

thoroughfare. [Rude v. City, supra; Dillon on Municipal Corporations, supra.] Consequently in cases such as the present where such right is destroyed or unreasonably abridged by an unlawful obstruction in the street, the resultant damages are particular, direct and special and the cases in this State recognize the right of the injured property owner to maintain an action for the recovery thereof. We conclude the court did not err in submitting the case to the jury and pass to the questions raised by defendant relating to the instructions on the measure of damages.

In the first instruction given at the request of plaintiff the jury were told "if you further find from the evidence that, by the construction and maintenance of said house track as aforesaid, the common and ordinary use of said First street, as a street, is impaired thereby, or that egress and ingress to and from plaintiff's property on First street is rendered more difficult or that the market value of the property was impaired by reason of the construction and maintenance of said house track of said railroad in the use of said house track by running cars over the same or permitting said cars to stand in front of plaintiff's property, then your verdict and finding must be for the plaintiff, in such sum as you may believe from the evidence she was damaged, not to exceed the sum of $800."

This instruction was erroneous in two respects: First, it authorized the jury to allow damages that were not special to plaintiff but were common, and, second, it permitted plaintiff to recover for the depreciation in the market value of her property caused by the nuisance as though the nuisance and its injurious consequences to plaintiff were permanent. Since, as we have shown, the track was laid in the street and is maintained without lawful right or authority, the nuisance thus created, being subject to abatement by

legal process, must be regarded as temporary. [Hamlin v. Burke Bros. Meat. & Prov. Co., decided at this term.]    Depreciation in the market value of land is the measure of recovery in an action for a permanent nuisance (Smith v. Sedalia, 244 Mo. 107; Kellogg v. Kirksville, 132 Mo. App. 519), but is not the test for, nor even an element in, the assessment of temporary damages.

Plaintiff is entitled to recover the damages that had accrued at the time of the commencement of this action from the three elements of injury we have mentioned, viz., first, the impairment of the means of ingress and egress; second, injury to the comfortable use and enjoyment of the premises, and, third, the destruction of her right to use the street as a temporary place of deposit for fuel and other bulky materials for use and consumption on her premises.    In enlarging the scope of her recoverable damages the instruction quoted contains prejudicial error against defendant.    This is not an instance of nondirection but of positive misdirection.    For this error the judgment is reversed and the cause remanded.

All concur.